# Illinois Official Reports

## Appellate Court

---

### *Carmichael v. Union Pacific R.R. Co.*, 2018 IL App (1st) 170075

---

| | |
|---|---|
| Appellate Court Caption | MARY TERRY CARMICHAEL, Plaintiff, v. UNION PACIFIC RAILROAD COMPANY; PROFESSIONAL TRANSPORTATION, INC., d/b/a PTI; and ACE AMERICAN INSURANCE COMPANY, Defendants (Professional Transportation, Inc., Counterplaintiff-Appellant; Mary Terry Carmichael and Jesse White, Illinois Secretary of State; Counterdefendants-Appellees). |
| District & No. | First District, Second Division<br>Docket No. 1-17-0075 |
| Filed | June 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-38582; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Hugh C. Griffin, of Hall Prangle & Schoonveld, LLC, of Chicago, and George H. Brant, of Judge, James, Hoban & Fisher, LLC, of Park Ridge, for appellant.<br><br>John S. Bishof Jr., of Law Office of John Bishof, P.C., of Chicago, for appellee Mary Terry Carmichael.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for other appellee. |

| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justice Hyman concurred in the judgment and opinion.<br>Justice Pucinski specially concurred, with opinion. |

**OPINION**

¶ 1     Plaintiff Mary Carmichael was injured in a car accident while she was a passenger in a van owned and operated by defendant Professional Transportation, Inc. (PTI). Carmichael brought suit against PTI, alleging that PTI failed to obtain the required limits of uninsured (UM) and underinsured (UIM) coverage under section 8-101(c) of the Illinois Vehicle Code (625 ILCS 5/8-101(c) (West 2010)). PTI argued as an affirmative defense that no private right of action could be implied under section 8-101(c). PTI also filed the counterclaim at issue in this appeal, challenging the constitutionality of section 8-101(c).

¶ 2     The trial court found that a private right of action could be implied under section 8-101(c) and dismissed PTI's counterclaim, finding that the section survived constitutional scrutiny. Following Carmichael's voluntary dismissal of her claim against PTI, PTI appealed the dismissal of its counterclaim. We find that we do not need to reach the constitutional issues raised by PTI because section 8-101(c) does not give rise to a private right of action. Therefore, Carmichael's complaint against PTI should have been dismissed. Accordingly, PTI's counterclaim is moot.

¶ 3                                    BACKGROUND

¶ 4     Carmichael, a Union Pacific Railroad Company (Union Pacific) employee, was injured when the van in which she was a passenger collided with a vehicle driven by Dwayne Bell. The six-passenger van was owned and operated by PTI and was used to transport Union Pacific employees between railroad jobsites pursuant to a service contract between PTI and Union Pacific. Although Carmichael originally sought recovery for her injuries in a lawsuit against PTI, Bell, and others, she dismissed PTI after it became apparent that the accident was caused solely by Bell's negligence.

¶ 5     Bell carried the minimum liability coverage required under the Vehicle Code at the time: $20,000 per person and $40,000 per occurrence. *Id.* § 7-203. Carmichael settled with Bell for the $20,000 per-person policy limit. PTI was insured by defendant ACE American Insurance Company (ACE). The ACE policy provided for $5 million in liability limits, but provided the minimum UM/UIM coverage of $20,000 per person and $40,000 per occurrence. Consequently, no additional sums were available to Carmichael under the ACE policy.

¶ 6     In October 2012, Carmichael filed this action against PTI, ACE, and Union Pacific. As it relates to PTI, Carmichael's complaint sought a declaration that PTI should be liable for her damages arising from the accident in excess of $20,000 up to $250,000 based on her allegation that PTI failed to obtain the required limits of UM/UIM coverage under section 8-101(c) of the Vehicle Code. *Id.* § 8-101(c).[1] That section, amended in 2006, requires "contract carrier[s]

_____

[1]Carmichael asserted other claims against Union Pacific and ACE. Union Pacific eventually settled with Carmichael, and the trial court granted ACE's motion to dismiss; neither is a party to this appeal.

- 2 -

transporting employees in the course of their employment" in a vehicle "designed to carry 15 or fewer passengers" to obtain UM/UIM coverage of not less than $250,000 per person. *Id.* Carmichael alleged that PTI's six-person van, used to transport her in the course of her employment, fell into the foregoing category and that PTI's violation of this statutory provision gave rise to a private right of action, entitling her to recover from PTI the difference between her $20,000 settlement with Bell and the $250,000 UIM limit mandated by the statute.

¶ 7    PTI raised a number of defenses to Carmichael's complaint, including that no private right of action could be implied under section 8-101(c) and that the amendment to section 8-101(c) violated the special legislation, equal protection, due process, and commerce clauses of the state and federal constitutions. PTI also filed a counterclaim in which it challenged the constitutionality of the amendment on the same grounds and asserted that a related penal statute, section 8-116 of the Vehicle Code (*id.* § 8-116 (providing that failure to comply with, *inter alia*, the Vehicle Code's minimum insurance requirements constitutes a Class A misdemeanor)), was constitutionally infirm for the same reasons. PTI joined the State of Illinois as a counterclaim defendant.

¶ 8    The State moved to dismiss PTI's counterclaim, arguing both the insufficiency of PTI's allegations under section 2-615 and the merits of PTI's constitutional challenges under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2012)). The State pointed out that the proper procedure in the event of a challenge to a statute on constitutional grounds was to provide notice of the challenge and "afford the State, political subdivision, agency or officer, as the case may be, the opportunity, but not the obligation, to intervene in the cause or proceeding for the purpose of defending the law or regulation challenged." Ill. S. Ct. R. 19(c) (eff. Sept. 1, 2006). In addition to defending the amendment to section 8-101(c) against PTI's constitutional challenges, the State requested that the court defer addressing such issues until it resolved whether Carmichael was entitled to maintain a private right of action for violation of the statute's provisions.

¶ 9    PTI later filed a motion to dismiss Carmichael's complaint, in which it raised the issue of Carmichael's right to sue. Although the trial court initially directed the parties to brief PTI's motion, the court proceeded to first resolve the constitutional issues. On January 30, 2015, the court granted the State's motion to dismiss PTI's counterclaim, finding that the amendment survived constitutional scrutiny.[2] The court then addressed PTI's motion to dismiss Carmichael's complaint. On July 24, 2015, the court denied PTI's motion to dismiss, finding that Carmichael could pursue a claim for violation of section 801(c)'s mandated UM/UIM coverage.

¶ 10    After its motion to reconsider was denied and after Carmichael eventually voluntarily dismissed her remaining claims, PTI timely filed its notice of appeal.[3] Carmichael originally filed a separate notice of appeal from the dismissal of her claim against ACE, but she dismissed that appeal on August 9, 2017. Carmichael refiled her complaint for declaratory judgment against PTI, and that case has been stayed pending the outcome of this appeal.

---

[2]The court ultimately determined that the proper party to respond was Jesse White, Illinois Secretary of State, and the caption of the case was amended accordingly.

[3]The trial court originally certified issues relating to the constitutionality of the amendment to section 8-101(c) pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016), but this court denied PTI's petition for leave to appeal.

¶ 12    Chapter 8 of the Vehicle Code generally requires persons who operate motor vehicles and transport passengers for hire to file with the Secretary of State proof of financial responsibility, which may consist of an insurance policy, a surety bond, or a certificate of self-insurance. 625 ILCS 5/8-101(a) (West 2010) (rendering unlawful the operation of a motor vehicle for hire without proof of financial responsibility filed with the Secretary of State); *Id.* § 8-102 (proof of financial responsibility may consist of an insurance policy or other proof of insurance). Before 2006, the Vehicle Code provided that an insurance policy presented as proof of financial responsibility was required to have a bodily injury liability limit of at least $250,000 and a property damage limit of $50,000. *Id.* § 8-109. Section 8-109 was silent regarding the amount of required UM/UIM coverage, leaving covered carriers for hire free to purchase the minimum UM/UIM coverage of $20,000 per person and $40,000 per occurrence.

¶ 13    The 2006 amendment to section 8-101(c), which, as noted, applies only to contract carriers transporting employees in the course of their employment in a vehicle designed to carry 15 or fewer passengers,[4] requires such carriers to verify, as part of their proof of financial responsibility, UM/UIM coverage of "not less than $250,000 per passenger." *Id.* § 8-101(c). It is undisputed that PTI did not comply with this provision and that the ACE policy contained only the minimum UM/UIM limits of coverage.

¶ 14    PTI contends that we need not reach the constitutional issues relating to the 2006 amendment to section 8-101(c) because, as a threshold matter, the trial court erred in finding that a private right of action exists to enforce that section's mandatory increased UM/UIM insurance requirements. See *People v. Waid*, 221 Ill. 2d 464, 473 (2006) (courts do not address constitutional issues that are unnecessary for the disposition of a case). The State agrees that if we accept PTI's argument and find that Carmichael has no right to sue for a violation of section 8-101(c), the constitutional issues are moot.

¶ 15    Because the statute on its face does not provide for a private right of action to enforce violations of its provisions, we must determine whether such a right can be implied. We review *de novo* the trial court's finding that Carmichael was entitled to maintain a cause of action against PTI for failure to comply with section 8-101(c)'s increased UM/UIM requirements. See *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶¶ 26, 39.

¶ 16    Judicial implication of a private right of action for violation of a statute that does not expressly provide a private remedy should be undertaken with caution. *Metzger v. DaRosa*, 209 Ill. 2d 30, 42-43 (2004); *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999). The fact that a statute was enacted to protect a segment of the public does not, standing alone, indicate that the legislature meant to create a private right of action to redress a statutory violation. *Rhodes v. Mill Race Inn, Inc.*, 126 Ill. App. 3d 1024, 1027 (1984) (citing *Hoover v. May Department Stores Co.*, 77 Ill. 2d 93, 103-04 (1979)).

¶ 17    Our supreme court has determined that the following four factors must be established in order to judicially imply a private right of action:

" '(1) [T]he plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a

[4]PTI suggests that this carve-out provision was the result of lobbying efforts by railroad labor unions in lieu of negotiating the issue through collective bargaining.

private right of action is necessary to provide an adequate remedy for violations of the statute.' " *Metzger*, 209 Ill. 2d at 36 (quoting *Fisher*, 188 Ill. 2d at 460).

PTI does not raise any argument regarding the first three factors, but it argues that the fourth element of necessity is not met because the statute's own enforcement mechanisms provide an adequate remedy for violations. See *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393 (1999) (unnecessary to consider first three elements where element of necessity is not met).

¶ 18 Regarding the element of necessity, courts will only imply a private right of action under a statute if " 'the statute would be ineffective, as a practical matter, unless such an action were implied.' " *Metzger*, 209 Ill. 2d at 39 (quoting *Fisher*, 188 Ill. 2d at 464). *Metzger* and *Fisher* are instructive on this issue. Metzger, a state police employee, pursued a claim based on the state police's violation of the whistleblower protection provision of the Personnel Code (20 ILCS 415/19c.1 (West 2002)). *Metzger*, 209 Ill. 2d at 32. She claimed she experienced adverse disciplinary action in retaliation for reporting coworkers' improper conduct. Our supreme court refused to imply a private right of action, finding that the statute's own enforcement mechanisms were sufficient to prevent and punish retaliation against whistleblowers. *Id.* at 41. The court noted that one who violated the Personnel Code could be subject to demotion, suspension, or discharge; additionally, violation was a Class B misdemeanor punishable by a $1500 fine and imprisonment for up to six months. *Id.* Accordingly, *Metzger* concluded: "We cannot say that the statutory framework of the Personnel Code is so deficient that it is necessary to imply a private right of action for employees to effectuate its purpose." *Id.* at 42.

¶ 19 Similarly, in *Fisher*, plaintiffs sought to pursue an action for damages under section 3-608 of the Nursing Home Care Act (210 ILCS 45/3-608 (West 1996)), which prohibits a nursing home from retaliating against employees who report improper patient treatment. *Fisher*, 188 Ill. 2d at 456. Plaintiffs were nurses who were allegedly harassed and, in one case, fired for reporting patient neglect. *Fisher* held that it was not necessary to imply a private right of action because "the Act contains numerous mechanisms to encourage the reporting of violations of the Act and to prevent and punish retaliation against those who make such reports." *Id.* at 464. Notably, the statute expressly authorized nursing home residents to bring suit for violations. *Id.* at 464-65. Additionally, a facility that violated the statute's provisions could be subject to fines and suspension or revocation of its license. *Id.* at 465-66. Because the statute "provided a statutory framework to encourage reporting of violations and to punish retaliation," *Fisher* held that a private right of action for employees was unnecessary to effectuate the statute's purpose. *Id.* at 467.

¶ 20 The rationale of *Metzger* and *Fisher* has been adopted in numerous other Illinois cases that decline to imply a private cause of action from statutes that have robust built-in enforcement mechanisms. See *Kagan*, 2016 IL App (1st) 131274, ¶¶ 44, 46 (no implied private right of action under Cemetery Care Act (760 ILCS 100/1 *et seq.* (West 2012)), which "is replete with sanctions and remedies for violations of its provisions," including felony criminal penalties, fines, and license revocation); *Davis v. Kewanee Hospital*, 2014 IL App (2d) 130304, ¶ 38 (no implied private right of action under confidentiality provision of Medical Studies Act (735 ILCS 5/8-2101 (West 2008)), where the Act provides that improper disclosure of privileged information is a Class A misdemeanor); *Rekosh v. Parks*, 316 Ill. App. 3d 58, 73-74 (2000) (no implied private right of action under the Funeral Directors and Embalmers Licensing Code (225 ILCS 41/1-1 *et seq.* (West 1998)), which provides penalties for noncompliance including fines and suspension or revocation of licenses), *abrogated on other grounds by Cochran v.*

*Securitas Security Services USA, Inc.*, 2017 IL 121200 (regarding scope of recoverable damages in action for interference with right to possess corpse). But see *Pilotto v. Urban Outfitters West, L.L.C.*, 2017 IL App (1st) 160844, ¶ 40 (private right of action was necessary to effectuate the purpose of the Restroom Access Act (410 ILCS 39/1 *et seq.* (West 2014)), since the only statutory penalty for violation was a fine not to exceed $100; the court found this penalty inadequate to make compliance likely, stating that "a retail store that refuses to comply with the Act would not even notice the impact of the petty offense penalty").

¶ 21    As with the foregoing cases, the Vehicle Code contains its own framework for enforcement. A vehicle operator who violates section 8-101(c) is subject to both criminal and regulatory penalties. Failure to comply with any of the provisions of Chapter 8 is a Class A misdemeanor, which allows for a fine up to $2500 and imprisonment for less than one year. 625 ILCS 5/8-116 (West 2010); 730 ILCS 5/5-4.5-55(a)-(e) (West 2010). Additionally, if an insurance policy or bond is withdrawn for a vehicle subject to section 8-101, the Secretary of State "immediately shall suspend" the owner's registration certificates, plates, and stickers for that vehicle. 625 ILCS 5/8-113 (West 2010). We cannot say that these statutory penalties are so deficient that it is necessary to imply a private right of action to effectuate the statute's purpose.

¶ 22    Carmichael nevertheless argues that the statutory penalties are inadequate because they do not compensate her for the damages she suffered—*e.g.*, by offsetting her medical expenses and lost wages. Our supreme court in *Metzger* rejected an identical argument. According to *Metzger*, plaintiff's focus on compensation was "inappropriate[ ]" and the proper consideration was whether the statutory penalties were sufficient to make compliance with the statute likely. *Metzger*, 209 Ill. 2d at 41.

¶ 23    Carmichael also argues that the statutory penalties are demonstrably inadequate because they did not deter PTI from carrying less than the mandated amount of coverage. But compliance only needs to be "likely" (*id.*), not certain. Every implied-right-of-action suit involves a defendant's alleged failure to comply with the statute at issue. If that were by itself sufficient to make a private right of action necessary, the element of necessity would be meaningless. Such is not the case in Illinois, where, as discussed, courts in numerous cases have found that statutory penalties obviate the need for an implied private right of action even where those penalties apparently did not impel the defendant to comply with the statute. See *id.* at 42; *Fisher*, 188 Ill. 2d at 467; *Kagan*, 2016 IL App (1st) 131274, ¶¶ 44, 46; *Davis*, 2014 IL App (2d) 130304, ¶ 38; *Rekosh*, 316 Ill. App. 3d at 73-74.

¶ 24    Accordingly, we conclude that section 8-101(c) of the Vehicle Code does not imply a private right of action for passengers in vehicles subject to the provisions of that section and PTI's counterclaim challenging the constitutionality of the amendment to section 8-101(c) is therefore moot. We affirm the trial court's January 30, 2015, dismissal of PTI's counterclaim, although on grounds different than that relied on by the trial court.

¶ 25    Affirmed.


¶ 26    JUSTICE PUCINSKI, specially concurring:

¶ 27    I write to specially concur with my colleagues because while I believe that their analysis of the current state of the law in Illinois is correct, I think the law is wrong. The whole reason for UM and UIM coverage was to take care of expenses of the victims of vehicle crashes. Punishing a license holder under the Vehicle Code does nothing to restore the victim and

leaves, in my opinion, a gaping hole in the system of justice. I would urge the legislature to look into this matter.