# Illinois Official Reports

## Supreme Court

---

**Yakich v. Aulds, 2019 IL 123667**

---

| | |
|---|---|
| Caption in Supreme Court: | CHARLES D. YAKICH, Appellee, v. ROSEMARY A. AULDS, Appellant. |
| Docket No. | 123667 |
| Filed | October 24, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County; the Hon. Thomas A. Else, Judge, presiding. |
| Judgment | Circuit court judgment vacated.<br>Cause remanded. |
| Counsel on Appeal | Todd D. Scalzo, of Mirabella Kincaid Frederick & Mirabella, LLC, and Michael J. Scalzo, of Scalzo Law Offices, both of Wheaton, for appellant.<br><br>Vincent L. DiTommaso and James V. DiTommaso, of DiTommaso Law LLC, of Oakbrook Terrace, and Sarah D. Casey, of Bennett & Bangser, LLC, of Chicago, for appellee.<br><br>Michael G. DiDomenico, of Lake Toback DiDomenico, and Paul L. Feinstein, of Paul L. Feinstein, Ltd., both of Chicago, for *amicus curiae* Illinois Chapter of the American Academy of Matrimonial Lawyers. |

Justices     JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1  This direct appeal arises from the circuit court's ruling declaring section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513(a) (West 2018)) unconstitutional. The court held that section 513 violated the equal protection clause of the federal constitution (U.S. Const., amend. XIV) as applied in this case. In making that ruling, the court declined to follow this court's long-standing precedent and effectively overruled it. We vacate that judgment, dismiss the appeal, and remand the cause to the circuit court for further proceedings.

¶ 2           I. BACKGROUND

¶ 3  In 2015, Rosemary Aulds filed a contribution petition in the Du Page County circuit court under section 513 of the Act (750 ILCS 5/513(a) (West 2018)) requesting that Charles D. Yakich be ordered to pay an equitable share of the anticipated college costs for their daughter. Rosemary and Charles were never married, and although the parties' 1997 agreed order addressed various child-related issues, it was silent on their obligation to contribute to their daughter's college expenses. Charles's response admitted, in relevant part, that he had the financial ability to pay. Nonetheless, he objected to paying because he had not been involved in the college selection process.

¶ 4  The trial court heard testimony from both parents and their daughter. Just prior to issuing its July 22, 2016, oral ruling, the trial court indicated that it thought section 513 was "interesting" because it raised a potential equal protection issue. More specifically, the court explained that "[p]eople that are married and have children have no obligation at all to pay for their children's college education. Because of that, people who are married have input into where their children go to school. *** *The legislature has taken away that choice from people who are not married. If you were to say that that is unfair, if you were to say that those people were treated unequally, I would agree with you, but that's what the law is.*" (Emphasis added.) The court then ordered Rosemary and Charles each to pay 40% of their daughter's prospective college expenses, with the daughter paying the remaining 20%.

¶ 5  Two months later, on September 23, 2016, Charles challenged section 513 on equal protection grounds for the first time. This court had upheld section 513 against an equal protection challenge in *Kujawinski v. Kujawinski*, 71 Ill. 2d 563 (1978), but Charles argued that the decision no longer applied due to changes in family structures, including an increase in the number of divorced and never-married parents. In response, Rosemary asserted *res judicata* and procedural objections to Charles's claim. Charles then filed a petition to terminate or modify the college expenses order. After hearing arguments, the trial court denied Charles's request to terminate or modify his payment obligation.

¶ 6    Charles then amended his constitutional claim, arguing the denial of his motion to terminate payments "usurped" his "parental rights in steering his adult daughter to an appropriate college." Rosemary reasserted her *res judicata* argument. At a hearing, Charles argued that *Kujawinski* no longer applied due to the subsequent increase in the number of nontraditional families and asserted that section 513 unconstitutionally barred him, as an unmarried parent, from using his "purse strings" to influence his daughter's decisions.

¶ 7    Before entering its ruling, the trial court noted that some states have struck down laws requiring parental contributions to college expenses as unconstitutional and that Illinois's position was in the minority. In its written order, the court declared section 513 unconstitutional as applied for not permitting unmarried parents to have the same input in their children's college decisions as married parents. It explained that, while *Kujawinski* had concluded that section 513 satisfied the rational basis test because children of unmarried parents faced more disadvantages and were less likely to receive financial help with college from their parents than children of married parents, that rationale was no longer viable. The trial court held that section 513 violated Charles's right to equal protection and was unconstitutional as applied, requiring it to vacate its prior college expenses order.

¶ 8    Rosemary filed a direct appeal under Illinois Supreme Court Rule 302(a)(1) (eff. Oct. 4, 2011). This court allowed the appeal and permitted the Illinois Chapter of the American Academy of Matrimonial Lawyers to file an *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 9                                    II. ANALYSIS

¶ 10    Section 513 of the Illinois Marriage and Dissolution of Marriage Act, titled "Education Expenses for a Non-minor Child," states, in relevant part:

> "(a) The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the educational expenses of any child of the parties. Unless otherwise agreed to by the parties, all education expenses which are the subject of a petition brought pursuant to this Section shall be incurred no later than the student's 23rd birthday, except for good cause shown, but in no event later than the child's 25th birthday." 750 ILCS 5/513(a) (West 2018).

¶ 11    The trial court found section 513, as applied in this case, violated the equal protection clause of the United States Constitution (U.S. Const., amend. XIV). In issuing its written ruling, the court explained that "section 513 does not permit divorced or never married parents the same input and ability to educate their children as is afforded to married or [*sic*] parents. This court finds that there is no rational basis for this difference."

¶ 12    Prior to reaching that conclusion, the trial court recognized that this court had already decided in *Kujawinski*, 71 Ill. 2d 563, that section 513 did not violate the equal protection clause. Rather than adhere to the precedent set by this court, however, the trial court chose to follow the reasoning of a more recent Pennsylvania case, *Curtis v. Kline*, 666 A.2d 265 (Pa. 1995). There, the Pennsylvania Supreme Court found that the state's college expense contribution statute's differing treatment of the college expenses incurred by children with married and unmarried parents violated the equal protection clause. *Curtis*, 666 A.2d at 269-70. While the trial court in the instant case acknowledged our conclusion in *Kujawinski*, it

instead relied on *Curtis* to determine independently that "the social changes that have occurred since 1978 make the rational basis cited in *Kujawinski* no longer tenable. Further, there is no apparent rational basis for the statute other than that cited in *Kujawinski*."

¶ 13 Regardless of the impact of any societal evolution that may have occurred since we issued our decision in *Kujawinski*, that holding remains directly on point here, and the trial court committed serious error by not applying it. Our circuit and appellate courts are bound to apply this court's precedent to the facts of the case before them under the fundamental principle of *stare decisis*. "When this court 'has declared the law on any point, *it alone can overrule and modify its previous opinion*, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases.' " (Emphasis in original.) *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 61 (quoting *Price v. Phillip Morris, Inc.*, 2015 IL 117687, ¶ 38). As in *Blumenthal*, while the trial court is free to question the continued vitality of *Kujawinski*, it lacks the authority to declare that precedent a dead letter. *Blumenthal*, 2016 IL 118781, ¶ 61.

¶ 14                                III. CONCLUSION

¶ 15 Because the trial court may not overrule prior precedents of this court, we are compelled to vacate its May 4, 2018, ruling that section 513 is unconstitutional as applied in this case. In entering that disposition, we express no opinion on the merits of the parties' arguments. See *Carmichael v. Union Pacific R.R. Co.*, 2019 IL 123853, ¶ 37 (vacating the judgments entered by the trial court and the appellate court without expressing an opinion on the merits of the parties' underlying substantive arguments). Without a valid judgment pending before us, we must necessarily dismiss this appeal and remand the cause to the circuit court for further proceedings. See *People v. Bingham*, 2018 IL 122008, ¶ 25 (dismissing an appeal after vacating the underlying judgment).

¶ 16         Circuit court judgment vacated.
¶ 17         Cause remanded.

- 4 -