# Illinois Official Reports

## Supreme Court

---

**Carmichael v. Union Pacific R.R. Co., 2019 IL 123853**

---

| | |
|---|---|
| Caption in Supreme Court: | MARY TERRY CARMICHAEL, Appellant, v. UNION PACIFIC RAILROAD COMPANY *et al.* (Professional Transportation, Inc., Appellee; Jesse White, Secretary of State, Intervenor-Appellant). |
| Docket No. | 123853 |
| Filed | September 19, 2019 |
| Rehearing denied | November 25, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Judgments vacated. Cause remanded. |
| Counsel on Appeal | John S. Bishof Jr., of Chicago, for appellant. |
| | Kwame Raoul, Attorney General, of Springfield (Evan Siegel and Bridget Dibattista, Assistant Attorneys General, of Chicago, of counsel), for intervenor-appellant. |
| | Hugh C. Griffin, of Hall Prangle & Schoonveld, LLC, of Chicago, and George H. Brant, of Judge, James, Hoban & Fisher, LLC, of Park Ridge, for appellee. |

Justices                    JUSTICE BURKE delivered the judgment of the court, with opinion.
Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1     The plaintiff in this case was injured in a motor vehicle accident caused by a third party while riding in an employee transport van owned by defendant Professional Transportation, Inc. (PTI). She filed a declaratory judgment action in the circuit court of Cook County seeking a declaration that defendant was legally responsible for her damages due to a statutory violation. Specifically, plaintiff alleged that defendant's vehicle insurance policy did not contain the minimum coverage required by section 8-101(c) of the Illinois Vehicle Code (625 ILCS 5/8-101(c) (West 2010)). In response, PTI filed affirmative defenses alleging that section 8-101(c) was unconstitutional. At the same time, PTI filed a counterclaim based on grounds identical to those alleged in its affirmative defenses. The trial court dismissed the counterclaim with prejudice. The appellate court affirmed the dismissal of the counterclaim, but on different grounds. 2018 IL App (1st) 170075. We now hold that the counterclaim was not a proper counterclaim under Illinois law. Accordingly, we strike the counterclaim, vacate the lower courts' judgments, and remand the cause to the trial court for further proceedings consistent with this opinion.

¶ 2                                 BACKGROUND

¶ 3     In 2010, plaintiff, Mary Terry Carmichael, was an employee of Union Pacific Railroad Company (Union Pacific). Union Pacific contracted with PTI to transport its employees to and between job sites. On November 13, 2010, plaintiff was riding in one of PTI's vans in the course of her employment when the van collided with another vehicle, causing plaintiff severe injuries. The driver of the other vehicle, Dwayne Bell, carried an automobile insurance policy with liability coverage of $20,000 per person and $40,000 per accident, the minimum coverage required by Illinois law.

¶ 4     On September 15, 2011, plaintiff filed a complaint in the law division of the circuit court of Cook County against Union Pacific, PTI, and Bell. Plaintiff sought money damages for her injuries based on negligence and violations of the Federal Employers' Liability Act (45 U.S.C. §§ 51-60 (2006)). Subsequently, Union Pacific and PTI were dismissed from the case after it was determined that their conduct did not cause the accident. Plaintiff ultimately reached a settlement with Bell in the amount of $20,000, the maximum amount of his liability coverage.

¶ 5     On October 17, 2012, while her negligence action was pending, plaintiff filed a three-count complaint for declaratory judgment and other relief in the chancery division of the circuit court against PTI, Union Pacific, and ACE American Insurance Company (ACE). In count I, plaintiff alleged that PTI was legally responsible for her damages because it was in violation of section 8-101(c) of the Illinois Vehicle Code (625 ILCS 5/8-101(c) (West 2010)). The version of section 8-101(c) in effect at the time of the accident required "a contract carrier transporting employees in the course of their employment on a highway of this State in a vehicle designed to carry 15 or fewer passengers" to maintain uninsured and underinsured motor vehicle

coverage "in a total amount of not less than $250,000 per passenger." *Id.* The statute required affected contract carriers to file proof of financial responsibility with the Secretary of State. *Id.* Pursuant to section 8-116 of the Vehicle Code, a contract carrier who failed to comply with section 8-101(c) was guilty of a Class A misdemeanor. *Id.* § 8-116.

¶ 6 Plaintiff alleged that PTI's liability policy did not meet the statutory minimum because its uninsured and underinsured motor vehicle coverage was limited to $20,000 per passenger and $40,000 per occurrence. She sought a judicial declaration that PTI was legally responsible for her damages sustained in the accident in excess of Bell's insurance policy limits, up to a maximum of $250,000.[1]

¶ 7 PTI initially filed an answer and affirmative defenses on April 23, 2013. On October 2, 2013, PTI filed its amended answer, five affirmative defenses, and counterclaim. The first four affirmative defenses alleged that sections 8-101(c) and 8-116 of the Vehicle Code were unconstitutional. First, PTI alleged that the statutes constitute prohibited special legislation, in violation of article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13).

¶ 8 Second, PTI alleged that the statutes violate the equal protection clauses in the state and federal constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV), on the grounds that "no other motor vehicle passenger carriers in Illinois are burdened with the unique requirement of maintaining such insurance, and there is no reasonable basis to impose such a requirement on PTI and others who are similarly situated."

¶ 9 Third, PTI alleged that the statutes violate the due process clauses in the state and federal constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV) because they "are unconstitutionally vague and uncertain *** in that the underinsured motorist insurance requirements contained therein make ambiguous references to vehicles designed to carry 'fifteen or fewer' passengers and impose ambiguous levels of insurance in a 'total amount' of 'not less than $250,000 per passenger.' "

¶ 10 Fourth, PTI alleged that the statutes "constitute an undue and unreasonable burden on interstate commerce," in violation of the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3), "in that contract motor carriers, such as PTI, which transport passengers in interstate commerce, could not know how much underinsured motorist coverage to obtain in advance of operating, *** and this and other burdens imposed by the statute would unreasonably burden PTI and other similarly situated contract carriers."

¶ 11 PTI's fifth affirmative defense alleged that section 8-101(c) does not provide any civil remedy for statutory violations. It alleged that the criminal penalty in section 8-116 is the sole enforcement mechanism for section 8-101(c) and, thus, plaintiff could not rely on the statute as grounds for filing a private cause of action.

¶ 12 Along with its amended answer and affirmative defenses, PTI filed a separate counterclaim seeking a declaratory judgment against plaintiff and the State of Illinois, by and through the Illinois Attorney General and the Illinois Secretary of State. The counterclaim restated the identical constitutional arguments alleged in PTI's first four affirmative defenses. The constitutional claims were the only legal grounds set forth in the counterclaim. In its prayer for

---

[1]Counts II and III of the complaint against Union Pacific and ACE were dismissed with prejudice and are not at issue in this appeal.

relief, PTI asked that the trial court declare unconstitutional section 8-101(c) and section 8-116, to the extent it applies to section 8-101(c). PTI also requested "that [plaintiff's] declaratory judgment action be dismissed with prejudice as to PTI."

¶ 13    On December 3, 2013, then-Attorney General Lisa Madigan filed a motion to dismiss the counterclaim pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2010)). Attorney General Madigan argued that PTI's claims should be dismissed because it failed to follow the procedure set forth in Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006). Under this rule, a party challenging the constitutionality of a statute must provide notice to the Attorney General in order to afford the appropriate state officer "the opportunity, but not the obligation, to intervene in the cause or proceeding for the purpose of defending" the statute. Ill. S. Ct. R. 19(c) (eff. Sept. 1, 2006). Here, PTI avoided this process by filing a declaratory judgment action directly against state officials. Thus, Attorney General Madigan argued that the counterclaim should be dismissed as procedurally improper.

¶ 14    Attorney General Madigan also argued that PTI's constitutional claims failed on the merits. Thus, the counterclaim should be dismissed with prejudice. Alternatively, she suggested that the court could avoid addressing the constitutional issues by resolving the case on nonconstitutional grounds, *i.e.*, by holding that section 8-101(c) does not provide for a private cause of action.

¶ 15    In response, PTI argued that deciding the case on nonconstitutional grounds would not completely resolve its counterclaim, for the following reasons:

> "This Court's declaration that 5/8-101(c) does not provide a civil remedy would not be binding in other civil cases brought by other plaintiffs against PTI under the statute. Moreover, such a finding would not fix PTI's rights regarding any criminal prosecution that might be conducted against PTI under the statute. Resolving PTI's counterclaim, which seeks a determination that the offending UM/UIM insurance obligation imposed by 5/8-101(c) is unconstitutional, is the only way to finally determine the rights of all of the parties to this case."

¶ 16    With leave of court, on May 16, 2014, PTI filed its third amended counterclaim naming Illinois Secretary of State Jesse White and plaintiff as the only counterdefendants. On the same day, PTI filed a motion to dismiss count I of plaintiff's complaint, arguing that section 8-101(c) does not provide for an express or implied private right of action. PTI also argued that its vehicles did not fit the definition of "a vehicle designed to carry 15 or fewer passengers" and, therefore, that section 8-101(c) was inapplicable.

¶ 17    On January 30, 2015, the trial court entered an order granting the State's motion to dismiss the third amended counterclaim with prejudice. In a written decision, the court examined all of PTI's constitutional claims and determined that each of the claims lacked merit. The court did not address any procedural irregularities presented by the counterclaim, nor did it address the private right of action or statutory interpretation issues raised by PTI.

¶ 18    On May 12, 2015, PTI filed a renewed motion to dismiss count I of the complaint. On July 24, 2015, the trial court entered an order denying the motion. The court held that the statute did provide for an implied private right of action and, therefore, that count I need not be dismissed on that basis. PTI filed a motion to reconsider or for certification under Illinois Supreme Court Rule 308 (eff. July 1, 2017). The trial court denied the motion to reconsider

but granted the motion to certify a question under Illinois Supreme Court Rule 308. However, on January 13, 2016, the appellate court exercised its discretion to deny PTI's appeal.

¶ 19 Subsequently, plaintiff filed a motion in the trial court to voluntarily dismiss her complaint. On December 13, 2016, the trial court ordered the case dismissed without prejudice upon plaintiff's motion.

¶ 20 After the voluntary dismissal of the case, PTI filed a timely notice of appeal seeking review of the court's January 30, 2015, order dismissing its counterclaim. PTI alleged the appellate court had jurisdiction because the December 13, 2016, voluntary dismissal of the case rendered all prior final orders in the case appealable.[2] While the appeal was pending, on January 26, 2017, plaintiff refiled her complaint in the trial court. The trial court ordered a stay of the matter pending resolution of PTI's appeal.

¶ 21 In the appellate court, PTI reversed its previous position. It argued that there was no need for the appellate court to reach the constitutional issues if the court determined that plaintiff had no private right of action under the statute. PTI conceded that the trial court's order denying its motion to dismiss based on the private right of action issue was a nonfinal order. Nevertheless, PTI argued that the appellate court could address the legal basis for its motion as a means of resolving the case on nonconstitutional grounds. See *Marconi v. City of Joliet*, 2013 IL App (3d) 110865, ¶ 16 (the appellate court has a duty to "avoid the adjudication of constitutional questions when a case can be decided on other grounds").

¶ 22 On June 26, 2018, the appellate court filed a published opinion affirming the trial court's dismissal of the counterclaim, but on different grounds than those relied on by the trial court. 2018 IL App (1st) 170075, ¶¶ 24-25. Addressing the issue of whether a private right of action was implied in the statute, the court held that the criminal and civil penalties for violations of section 8-101(c)[3] were sufficient enforcement mechanisms, rendering unnecessary a separate civil remedy for injured plaintiffs. *Id.* ¶¶ 21-23. Thus, the court held that the statute did not provide for an implied private right of action (*id.* ¶ 24) and, accordingly, that "Carmichael's complaint against PTI should have been dismissed" (*id.* ¶ 2). The court further held that it need not reach the constitutional issues raised in the counterclaim because its decision rendered the counterclaim moot. *Id.* ¶ 24.

¶ 23 This court allowed plaintiff's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. July 1, 2018)) and granted the State's motion for leave to intervene. PTI requests cross-relief on the constitutional issues raised in its counterclaim.

¶ 24 ANALYSIS

¶ 25 The order at issue in this appeal is the trial court's January 30, 2015, order dismissing PTI's third amended counterclaim with prejudice. Section 2-608 of the Code of Civil Procedure governs the filing of counterclaims. 735 ILCS 5/2-608 (West 2010). Section 2-608 provides:

---

[2]"It is well settled that final orders entered in a case become appealable following a voluntary dismissal." *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503 (1997).

[3]In addition to the criminal penalty in section 8-116, the Vehicle Code provides that contract carriers who cancel or withdraw their insurance policy required by section 8-101(c) are subject to suspension of their vehicle registrations. 625 ILCS 5/8-113 (West 2010).

"§ 2-608. Counterclaims. (a) Any claim by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross claim or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim.

(b) The counterclaim shall be a part of the answer, and shall be designated as a counterclaim. Service of process on parties already before the court is not necessary.

(c) Every counterclaim shall be pleaded in the same manner and with the same particularity as a complaint, *and shall be complete in itself*, but allegations set forth in other parts of the answer may be incorporated by specific reference instead of being repeated.

(d) An answer to a counterclaim and pleadings subsequent thereto shall be filed as in the case of a complaint and with like designation and effect." (Emphasis added.) *Id.*

¶ 26    This court has defined a counterclaim as "an independent cause of action" "in favor of the defendant against the plaintiff, which the defendant is authorized to litigate in opposition to the plaintiff's claim in the same action." *Wilson v. Tromly*, 404 Ill. 307, 309-10 (1949). As an independent action, a counterclaim "must stand or fall on its own merits, regardless of the disposition of the complaint." *Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 589 (1999); see also 735 ILCS 5/2-608(c) (West 2010) ("[e]very counterclaim *** shall be complete in itself"). "In order to state a cause of action, [a] counterclaim must be both legally sufficient and factually sufficient, setting forth a legally recognized claim as its basis for recovery, as well as pleading facts which bring the claim within the legally recognized cause of action alleged." *Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437, 443 (1993). In contrast to an affirmative defense, which merely seeks to defeat the plaintiff's cause of action by a denial or confession and avoidance, a counterclaim seeks affirmative relief. *Wilson*, 404 Ill. at 309; *Citicorp Savings of Illinois v. Rucker*, 295 Ill. App. 3d 801, 806 (1998); *In re Estate of Soderholm*, 127 Ill. App. 3d 871, 875 (1984).

¶ 27    A purported counterclaim that fails to allege an independent, substantive cause of action against the plaintiff and fails to make a specific prayer for relief is not a true counterclaim. See *Rayman v. Peoples Savings Corp.*, 735 F. Supp. 842, 852 (N.D. Ill. 1990) ("The label 'counterclaim' has no magic. What is really an 'answer or defense to a suit does not become an independent piece of litigation because of its label ***.' " (quoting *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985))). For instance, in *Kendle v. Village of Downers Grove*, 156 Ill. App. 3d 545, 554 (1987), the court held that neither of the defendants' answers "contained a specific prayer for relief or raised a substantive cause of action against plaintiffs." Thus, they could not be considered counterclaims. *Id.* at 553-54.

¶ 28    By contrast, in *Soderholm*, 127 Ill. App. 3d 871, the court held that a responsive pleading was, in actuality, a counterclaim. The plaintiffs in that case filed a declaratory judgment action seeking a judicial determination that Myrtle B. Soderholm, an incompetent person, had the requisite mental capacity to create a number of trust accounts under which the plaintiffs were the beneficiaries. *Id.* at 873. In response, LaSalle National Bank, the conservator of Soderholm's estate, filed an answer alleging in part that plaintiffs had fraudulently abused a fiduciary relationship they owed to her. *Id.* In its prayer for relief, the bank asked the court to order plaintiffs to turn over any property in their possession belonging to Soderholm and

- 6 -

requested a judicial declaration that plaintiffs had no legal or equitable rights in any of Soderholm's property. *Id.* at 873-74. The appellate court held that the bank's answer constituted a viable counterclaim because it contained independent allegations against plaintiffs in support of its claims for relief. *Id.* at 875.

¶ 29    A counterclaim that requests no affirmative relief and only seeks to defeat the plaintiff's claims is really an affirmative defense, not a counterclaim. See *Rayman*, 735 F. Supp. at 852-53. For this reason, the federal courts routinely hold that counterclaims that essentially duplicate the parties' affirmative defenses should be dismissed or disregarded by the trial court as repetitious and unnecessary. See *Malibu Media, LLC v. Parsons*, No. 12-1331 (BAH), 2013 WL 12324463, at *10 (D.D.C. May 31, 2013) ("[I]f the defendant prevails on these [affirmative] defenses, the result she seeks in the counterclaims will be moot. In these circumstances, the redundant counterclaims are simply superfluous ***."); *Malibu Media, LLC v. Doe 1*, No. DKC 12-1198, 2012 WL 6681990, at *3 (D. Md. Dec. 21, 2012) ("Courts have typically declined to consider counterclaims for declaratory relief that are duplicative of affirmative defenses." (collecting cases)); *Rayman*, 735 F. Supp. at 853 (count of counterclaim that duplicated affirmative defense added nothing to the pleadings already before the court and would be disregarded).

¶ 30    Turning to the language in PTI's third amended counterclaim, the first seven paragraphs summarize the declaratory judgment action filed by plaintiff against PTI. Following these summary paragraphs, paragraph eight alleges:

> "8. PTI's Amended Answer raises affirmative defenses I-IV, directed against 625 ILCS 5/8-101(c) which assert that said statute is unconstitutional, and the claims of unconstitutionality are hereby restated as follows:"

Paragraphs 8(a) through 8(d) then restate the identical constitutional arguments set forth in PTI's affirmative defenses. The remaining paragraphs in the counterclaim allege:

> "9. JESSE WHITE, ILLINOIS SECRETARY OF STATE, is an appropriate party in this case because he is charged with enforcing the Illinois Vehicle Code, particularly 625 ILCS 5/8-101(c), which is relied upon by MARY TERRY CARMICHAEL, and which PTI alleges is unconstitutional.

> 10. No other motor carriers in Illinois, other than those who contract to transport employees in the course of their employment in vehicles designed to carry 15 or fewer passengers, are required to carry underinsured motorist insurance coverage in the amount of $250,000 per passenger.

> 11. There is no reasonable basis for concluding that those motor carriers who transport employees in the course of their employment in motor vehicles designed to carry 15 passengers or less, are more likely to have their vehicles struck by underinsured motorists, or that motor carriers, such as PTI, should be singled out by law and burdened with the unique obligation to secure $250,000 in underinsured motorist coverage, per passenger, to guard against such an eventuality.

> 12. According to the terms of 625 ILCS 5/8-101(c) and related penal statute, 625 ILCS 5/8-116, PTI, and others similarly situated, could avoid the penal terms of the statute by owning and operating motor vehicles designed to carry 16 or fewer passengers, rather than 15 or fewer passengers, and there is no reasonable basis for making such a distinction in the penal reach of said statute.

- 7 -

13. House Transcript, 2005 Regular Session No. 28, which pertains to the passage of 625 ILCS 5/8-101(c), documents that the underinsured motorist insurance provision at issue was enacted at the behest of railroad labor unions which sought to burden contract motor carriers who transported their union membership with the unique obligation to carry underinsured motorist insurance coverage in no less an amount than $250,000 per passenger. (See, EXHIBIT C attached hereto).

14. Plaintiff, MARY TERRY CARMICHAEL, is a railroad union member who has brought her declaratory judgment action against PTI, in an attempt to benefit from the special legislation that was enacted at her union's behest, allegedly burdening PTI, and others similarly situated, with the obligation to obtain underinsured motorist insurance coverage in an amount no less than $250,000 per passenger.

15. That by virtue of the foregoing, there is a case or controversy existing between PTI, MARY TERRY CARMICHAEL and JESSE WHITE, ILLINOIS SECRETARY OF STATE, and according to the terms and provisions of 735 ILCS 5/2-701, this Court is vested with the power to declare the rights and liabilities of the parties hereto, as regards the constitutionality of 625 ILCS 5/8-101(c).

WHEREFORE, Defendant/Counter-Plaintiff, PROFESSIONAL TRANSPORTATION, INC. prays that 625 ILCS 5/8-101(c) which is cited as the basis for MARY TERRY CARMICHAEL'S cause of action against PROFESSIONAL TRANSPORTATION, INC., be declared unconstitutional, null and void; that the penal provision in 625 ILCS 5/8-116 be declared unconstitutional as applied to the provisions of 625 ILCS 5/8-101(c) here at issue; that MARY TERRY CARMICHAEL'S declaratory judgment action be dismissed with prejudice as to PTI; and that PTI be awarded such further relief as seems just and proper."

¶ 31     It is clear that PTI's counterclaim does not state an independent cause of action against plaintiff. Instead, it requests a declaratory judgment on the identical legal grounds PTI already asserted in its affirmative defenses. Furthermore, the counterclaim's prayer for relief requests that the trial court declare the statutes forming the basis of plaintiff's complaint unconstitutional and dismiss the complaint with prejudice. It is apparent from this language that the only purpose of the counterclaim is to defeat plaintiff's claim against PTI based on allegations that the statute is unconstitutional, *i.e.*, that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(9) (West 2010)). Since the counterclaim requests no affirmative relief other than a judicial declaration that the claim filed against PTI is barred, it is not an actual counterclaim. Moreover, because the purported counterclaim essentially duplicates the claims in PTI's affirmative defenses without requesting affirmative relief, it is superfluous and carries no legal weight as an independent action against plaintiff. See *Rayman*, 735 F. Supp. at 853.

¶ 32     With respect to PTI's claims against the Secretary of State, its counterclaim is also not a true counterclaim. PTI asserts that it must expend significant sums to procure the uninsured and underinsured motorist coverage required by section 8-101(c) of the Vehicle Code or risk the loss of its operating privileges. It contends that this establishes an independent cause of action against Secretary White separate from its cause of action against plaintiff. However, we reject any suggestion that this means PTI's purported counterclaim is a true counterclaim. "A counterclaim is an action brought by a named party against another *existing* party to the action,

and is governed by section 2-608 of the Illinois Code of Civil Procedure [citation]." (Emphasis added.) *People v. Fiorini*, 143 Ill. 2d 318, 329 (1991). Secretary White was not an existing party to the action at the time PTI filed its counterclaim. PTI attempted to bring him into the action as a new party. Accordingly, PTI's cause of action against Secretary White is not an actual counterclaim.[4]

¶ 33    PTI's claim against the Secretary of State appears to be a claim for declaratory judgment based on the constitutionality of the statutes at issue in this case. PTI inserted its claim against Secretary White into a counterclaim in the present litigation. This was improper. Rather than bringing in Secretary White as a named party to its purported counterclaim, PTI should have followed the procedure in Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006). Rule 19 requires that a litigant raising a constitutional challenge to a statute "shall serve an appropriate notice thereof on the Attorney General, State's Attorney, municipal counsel or agency attorney, as the case may be." Ill. S. Ct. R. 19(a) (eff. Sept. 1, 2006). The purpose of Rule 19 is to "afford the State, political subdivision, agency or officer, as the case may be, the opportunity, but not the obligation, to intervene in the cause or proceeding for the purpose of defending the law or regulation challenged." Ill. S. Ct. R. 19(c) (eff. Sept. 1, 2006). Accordingly, at the time it filed its answer and affirmative defenses, PTI should have notified the Illinois Attorney General of its intention to challenge the constitutionality of sections 8-101(c) and 8-116 of the Vehicle Code. The Attorney General then would have had the option to intervene in the proceeding for the purpose of defending the statutes.

¶ 34    Although the deficiencies in the counterclaim are readily apparent, the parties and the lower courts nevertheless treated the counterclaim as though it were a complete, independent cause of action seeking affirmative relief against plaintiff and Secretary White. This was error that led to several procedural irregularities. For one, the appellate court's decision was based solely on the legal grounds alleged in PTI's motion to dismiss plaintiff's complaint. As a result, PTI effectively attained appellate review of its motion to dismiss, even though the trial court's July 24, 2015, order denying that motion was neither final nor appealable. See *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 10 (an order denying a motion to dismiss is not a final and appealable order).[5] This result illustrates why it is improper to treat PTI's purported counterclaim as a true counterclaim. By filing a separate "counterclaim" that duplicated its affirmative defenses, PTI was rewarded with appeal rights to which it was otherwise not entitled.

¶ 35    Another odd aspect to this case is that the appellate court declined to address the legal issues raised in the counterclaim. Instead, at PTI's request, the appellate court held that *plaintiff's complaint* "should have been dismissed" on the grounds that there was no private cause of action implied in the statute. 2018 IL App (1st) 170075, ¶ 2. Thus, the appellate court ruled on the merits of the complaint despite the fact that it had been voluntarily dismissed and plaintiff's refiled complaint was pending in the trial court below. In so ruling, the appellate

---

[4]Nor can defendant's cause of action against Secretary White be recharacterized as a third-party complaint because it does not seek indemnification or contribution for defendant's liability to plaintiff. See 735 ILCS 5/2-406(b) (West 2010); *People v. Brockman*, 143 Ill. 2d 351, 364-65 (1991).

[5]The December 13, 2016, voluntary dismissal did not render the July 24, 2015, order appealable because a denial of a motion to dismiss is not final in nature. See *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 140 (1995).

court essentially approved PTI's strategy of treating the counterclaim as an independent action for purposes of jurisdiction, while treating it as an affirmative defense for purposes of deciding the merits.

¶ 36    All of the procedural anomalies in this case stem from PTI's improperly filed counterclaim. The purported counterclaim is not an actual counterclaim because it does not state an independent cause of action or request affirmative relief against counterdefendants. The only issues raised in the counterclaim—constitutional challenges to sections 8-101(c) and 8-116 of the Vehicle Code—were already before the trial court in the form of affirmative defenses. We therefore strike the counterclaim as duplicative of PTI's affirmative defenses. We also vacate both the trial court's order dismissing the counterclaim on the merits and the appellate court's judgment on appeal from that order. Further, we remand to the trial court, where PTI is free to proceed on its affirmative defenses as if the counterclaim had never been filed.

¶ 37    We express no opinion on the constitutional or private right of action issues raised and argued by the parties. Although this court has supervisory authority to evaluate judgments of the lower courts (Ill. Const. 1970, art. VI, § 16), that authority should be reserved for exceptional circumstances. See *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510, 515 (2001). In the case at bar, it would be inappropriate for us to exercise our supervisory authority at this stage in the proceedings. Had PTI not filed its improper counterclaim, it would not have had a right to appeal the order denying its motion to dismiss the complaint. As we stated earlier, an order denying a motion to dismiss is neither final nor appealable. Accordingly, if we were to decide the issues raised in PTI's affirmative defenses, we would be rewarding PTI for circumventing the normal appellate process. See *Bakalis*, 196 Ill. 2d at 513 (supervisory orders are "disfavored" and to be used only if "the normal appellate process will not afford adequate relief").

¶ 38                                CONCLUSION

¶ 39    For the foregoing reasons, the trial court's January 30, 2015, order and the appellate court's judgment are hereby vacated. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 40    Judgments vacated.

¶ 41    Cause remanded.