2024 IL App (1st) 230178-U

Fourth Division
Filed July 25, 2024

No. 1-23-0178

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the |
| Plaintiff-Appellee, | Circuit Court of Cook County |
| v. | No. 12 CR 11612 02 |
| DAVID NEWELL, | The Honorable James B. Linn, |
| Defendant-Appellant. | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held:*  (1) The denial of defendant's actual-innocence claim after a third-stage evidentiary hearing was affirmed where the record did not show that the court misremembered key facts when it entered its findings. (2) The dismissal of defendant's claim that he was denied the effective assistance of counsel on direct appeal was affirmed where the failure to raise a confrontation claim was not prejudicial. (3) The dismissal of the petition's remaining claims was vacated, and the cause was remanded, where postconviction counsel did not amend the *pro se* petition even though it included claims that lacked necessary factual support.

¶ 2     Defendant David Newell appeals from the denial of his postconviction petition. All but one of his postconviction claims were dismissed at the second stage, and the court denied relief on his remaining claim after a third-stage evidentiary hearing. For the reasons that follow, we affirm the judgment on the claim that was denied after an evidentiary hearing and his claim that he was denied

his right to the effective assistance of counsel on direct appeal, but we reverse and remand for further proceedings on his remaining claims.

¶ 3                              I. BACKGROUND

¶ 4      On the evening of May 18, 2012, a person sitting in the back seat of a dark, four-door car opened fire on a group of five people standing near South Winchester Avenue and West 56th Street in West Englewood, Chicago. The group included members of a gang known as the Winchester Boys. Three people were struck by bullets and injured, including cousins Tatiana Mason and Lonyae Barr. Both women knew Newell and identified him as the shooter when they spoke to the police at the hospital several hours later. Barr also told police that she recognized a close family friend named Demetrius Spencer sitting in the front seat of the car. Both Newell and Spencer were members of the Hoyne Boys, a rival of the Winchester Boys.

¶ 5      About two weeks after the shooting, the police located, arrested, and interrogated Spencer. According to one of the detectives who questioned him, Spencer told them that Newell had performed the shooting to retaliate against Jarvis Wallace, a leader in the Winchester Boys who had been celebrating the killing, six months earlier, of a Hoyne Boy named Christopher Abernathy. The night of the shooting, Spencer, Newell, and a third person named Melvin Hunter went looking for Wallace in a black Nissan Maxima that they had borrowed from a "hype." They found him with a group of people, including Lonyae Barr, near Winchester and 56th. They drove to an abandoned car nearby where a gun was stashed. Newell retrieved it and they drove back to Winchester, where Newell, sitting in the back seat, fired at the group five times. Several hours later, Spencer signed a statement written by an assistant state's attorney relating the same essential facts. The only significant difference between the two statements had to do with where he and Newell were sitting in the car while they drove around looking for Wallace. Spencer told the detectives that he had started the night riding in the back before switching places with Newell, who had been in the front passenger seat, after Newell retrieved the gun. But the written statement related that Spencer was in the front seat the whole time.

¶ 6      Within hours of Spencer naming him as the shooter, officers arrested Newell and took him to the station, where Mason, Barr, and the third person who had been shot all identified him as the shooter in separate lineups. Spencer and Newell were both charged with nine counts of attempted murder (three counts for each of the three victims) and three counts of aggravated battery. In 2015, the court held simultaneous, but severed, bench trials for each defendant.

¶ 7      At trial, Mason and Barr both identified Newell as the shooter. They testified that, before the shooting, a gray (Mason) or dark blue or black (Barr) four-door car drove past their group. Mason saw that Newell was sitting in the front passenger seat, but Barr did not see who was inside. A few minutes later, the car returned. According to both witnesses, Newell was sitting in the back seat. Barr also testified that she saw Spencer sitting in the front passenger seat. Newell opened fire, and both women were hit by bullets and ran away. A gang expert testified that Spencer and Newell were both members of the Hoyne Boys, whose rivalry with the Winchester Boys had generated 20 or 30 shootings in the four-year period leading up to the shooting in this case. Spencer did not testify, but a police detective testified to the substance of Spencer's oral statements, and the State introduced the written statement that Spencer had signed.

¶ 8      Newell put on an alibi witness, his mother's former fiancé, Barry Benton. Benton testified that on the day the shooting took place, he spent the late afternoon and the entire evening playing cards with a group that included Newell, Newell's sister Dequashay, his uncle Junior, and an unnamed friend from the neighborhood. Benton acknowledged speaking to a representative of the state's attorney's office without mentioning that Newell had been with him at the time of the shooting. In rebuttal, a detective testified that Newell had given a different account. While under interrogation, Newell first said that, on the night of the shooting, he was hanging out with his brother Dequan and another person before returning home with Dequan around 8 p.m. Newell said that his mother and four sisters were all at home, and he did not mention Benton or Junior. When detectives informed him that his mother, sisters, and brother all said that they were not with him that night, Newell said he must have been mistaken; he then told his interrogators that the windows

to the house were broken out at some point after he got home that night and that Benton came home around 10 p.m.

¶ 9    After Spencer's statements were presented in the prosecution's case-in-chief, the judge stated on the record that he would not consider those statements against Newell:

> "[COUNSEL FOR NEWELL:] Judge, of course, for the record—
>
> THE COURT: Mr. Spencer's statements are not going to be considered against Mr. Newell.
>
> [COUNSEL FOR NEWELL]: Right.
>
> THE COURT: I totally understand that. I will not consider what Mr. Spencer said against Mr. Newell."

¶ 10    The State's closing argument did not distinguish between evidence admissible against both defendants and evidence only admissible against Spencer. While discussing Spencer's statement, the prosecutor suggested an inference about Newell's state of mind based on what Spencer told detectives, prompting an objection from Newell's attorney, which the court overruled:

> "[PROSECUTOR:] Demetrius Spencer told Detective Sullivan that David Newell asked him to switch seats with him. I would submit that David Newell asked Demetrius Spencer to switch seat[s] with him because he preferred to shoot from the backseat. Maybe he's more comfortable in the backseat. Maybe it's a better opportunity to hide.
>
> [COUNSEL FOR NEWELL]: I am going to object.
>
> THE COURT: Overruled. These are inferences.
>
> [COUNSEL FOR NEWELL]: But the statement of Demetrius Spencer is not—
>
> THE COURT: Well, I'm not considering it.
>
> Okay. Let me be clear, I am absolutely not considering Mr. Spencer's statement against Mr. Newell. She's arguing both and I will not consider

any statements made by Mr. Spencer against Mr. Newell. They're only admissible as to Mr. Spencer. They're not admissible as to David Newell.

We talked about this several times throughout the course of the trial, but she is arguing both right now, because even though they're severed because of that statement, we're still hearing the cases at the same time. It's like a double bench. It's like a double jury."

¶ 11    When it entered its findings, the court began by reiterating that it had "always considered these trials as severed trials" and that it was "in no way considering the statements of Mr. Spencer against Mr. Newell." It then noted that the evidence showed that there was "clear animus on the streets" between the Hoyne Boys and the Winchester Boys "about previous shootings" and "people celebrating previous shootings."

¶ 12    Turning to Newell, specifically, the court found that he was the shooter based on the identifications of Mason and Barr, who both knew him. But it went on to find that the evidence did not prove beyond a reasonable doubt that Newell had a specific intent to kill:

"The tougher part of the analysis is that about attempt murder because, in Illinois, you have to show specific intent to kill. It's a clear inference that might be drawn that if you are shooting at somebody in this fashion in a drive-by shooting, you are trying to kill them. That was not elicited from Mr. Spencer during the course of his statement. It wasn't mentioned by any witnesses as something that was said or they felt was happening.

They knew they were being shot at and shot, but I don't have I believe sufficient evidence on the element of specific intent to kill."

The court therefore found Newell guilty of aggravated battery with a firearm, but it acquitted him of attempted murder.

¶ 13    The court next turned to Spencer. Explaining that Spencer's statements showed that "[h]e was part and parcel of this case" but not the shooter, the court also found him guilty of aggravated battery with a firearm but acquitted him of attempted murder.

¶ 14    At sentencing, the court considered a standard pre-sentence investigation report. The report disclosed that Newell came from a stable home and that, although his parents had separated when he was five years old, he kept in contact with his father. He joined the Gangster Disciples as a twelve-year-old, but he reported that he had quit four years earlier.[1] At the time of his arrest, he had completed three years of high school but "lost interest" after his junior year and did not return for his senior year. He had, however, earned a GED while in pretrial detention. The court also heard testimony from a detective that Newell's booking photos from his arrest showed him wearing a shirt memorializing Christopher Abernathy and bearing a tattoo reading "H-B-Z-C [*sic*]," which stood for *Hoyne Boys Crazy*. In allocution, Newell apologized for what happened to the victims, maintained his innocence, and asked for lenience. Before imposing sentence, the court observed that Newell was "[t]wenty-one years old" and had "been living something of a gang and thug life for quite some time now." It noted that he had already been to the juvenile department of corrections and that it was not the first time he had possessed a gun. Based on its finding that Mason and Barr sustained severe bodily injuries during the shooting, the court sentenced Newell to two consecutive terms of 12 years each.

¶ 15    Newell filed a notice of appeal from his conviction and sentence. Rather than a brief, his attorney on appeal filed a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Her accompanying memorandum discussed five potential issues: the validity of Newell's jury waiver, the sufficiency of the evidence to sustain his conviction, the admission of gang evidence at trial, the length of his sentences, and the trial court's decision to run the sentences consecutively. Appellate counsel concluded that none of these issues had arguable merit. Counsel did not identify the trial court's references to Spencer's statements as potential issues, and her discussion of Newell's sentences did not consider whether he might have a constitutional claim in light of his age at the time of the offense. In his *pro se* response to counsel's motion to withdraw, Newell raised

---

[1]    The pre-sentence investigation report was filed in September 2015, less than four years after the charged shooting.

several points. As relevant here, his response argued that the trial court had imposed consecutive sentences without taking his youth and rehabilitative potential into account and that Spencer had signed an affidavit admitting that he was the one responsible for the shooting and had lied about Newell's involvement. We granted counsel's motion to withdraw and affirmed Newell's conviction and sentence. *People v. Newell*, No. 1-15-3002 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16    Newell then filed a *pro se* postconviction petition. Four of the petition's claims are relevant to this appeal. First, Newell claimed that his conviction violated due process because he was actually innocent of the charged offense. In support of this claim, Newell attached two affidavits sworn to by Demetrius Spencer. In the affidavits, Spencer averred that he had performed the shooting and that Newell had not even been present for it, and he explained that he had implicated Newell because he believed that, if he did, the police would allow him to go home. Second, Newell claimed that he was denied his right to the effective assistance of counsel on direct appeal. He alleged that, despite its statements during the trial, the trial court's findings showed that it had improperly considered Spencer's statement against him and that appellate counsel should have challenged his conviction under *Bruton v. United States*, 391 U.S. 123 (1968), rather than filing a no-arguable-merit motion to withdraw under *Anders*. Third, Newell claimed that consecutive sentencing without consideration of his youth—the charged offense took place the day after his eighteenth birthday—violated both the federal and state constitutions. See U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11. He supported that claim with copies of four articles discussing the implications of incomplete neurological development for young-adult offenders in the court system, but he included no information specific to him or to his case. Fourth, Newell claimed that he was denied his right to the effective assistance of counsel at trial by counsel's failure to introduce into evidence Facebook messages sent to him by Lonyae Barr about the shooting and photographs from Facebook depicting Barr with a gang tattoo and making gang signs. Rather than attaching the messages and photographs to the petition, he explained that he was not able to access his Facebook account, and he attached a letter he had sent to his trial attorney requesting that she send him copies

of those materials, which, according to the petition and the letter, his mother and the mother of one of his children had given to counsel before trial.

¶ 17    The petition was summarily dismissed by the trial court. On appeal, however, the State conceded that Newell's actual-innocence claim had an arguable basis in law and fact, so we granted an agreed motion for a summary disposition, reversed, and remanded for second-stage postconviction proceedings. *People v. Newell*, No. 1-19-1373 (2021) (agreed order).

¶ 18    On remand, counsel was appointed to represent Newell. See 725 ILCS 5/122-4 (West 2022). In May 2022, postconviction counsel filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In her certificate, counsel averred that she had consulted with Newell and reviewed the trial and postconviction record. She also averred that she had "investigated Petitioner's claims" but not made any amendments to the *pro se* petition because she did "not believe that any amendments [were] necessary for an adequate presentation of petitioner's contentions."

¶ 19    After counsel filed the Rule 651(c) certificate, the State filed a motion to dismiss all of the postconviction claims except for the actual-innocence claim, which it conceded should be set for a third-stage evidentiary hearing. The State's motion argued that appellate counsel was not ineffective for not raising the *Bruton* claim, which would have failed in light of the trial court's on-the-record assurances that it would not consider Spencer's statement against Newell. It argued that the petition's claim about trial counsel's failure to introduce evidence from Facebook necessarily failed because, contrary to the Post-Conviction Hearing Act's documentation requirements, it was not supported by the materials counsel failed to introduce. See 725 ILCS 5/122-2 (West 2022) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."). It further argued that the Facebook claim failed on the merits because counsel's failure to introduce those materials was neither deficient nor prejudicial. Similarly, it argued that the petition's constitutional challenge to consecutive sentences was legally insufficient because, although it was supported by general information about neurological development in young adults, the petition did not "include the

required factual link to his specific circumstances." It further argued that there was no federal constitutional violation because Newell was at least 18 years old at the time of the offense and that there was no state constitutional violation because his aggregate sentence was not long enough to be deemed a *de facto* life sentence.

¶ 20     At the hearing on its motion to dismiss, the State specifically addressed the state-law constitutional challenge to the sentence, arguing that article I, section 11, "does not apply when there is not a de facto life sentence." Remarking that Newell's sentence required him to serve only 20 years and 4 months in prison, the trial court agreed that it was "far from a de facto life sentence." The State also briefly addressed the *Bruton* claim, reiterating that the court had repeatedly stated during trial that it was not considering Spencer's statement against Newell. The State otherwise rested on its motion to dismiss, asserting that each of his claims were either not based on law, rebutted by the record, not supported by any attachments, or "a combination of all three." Following argument, the trial court granted the motion, finding, "for the reasons stated during this colloquy and by [the assistant state's attorney]," that Newell's claims (other than his actual-innocence claim) were "wholly without merit."

¶ 21     The court held a third-stage evidentiary hearing on the actual-innocence claim, where the sole witness was Demetrius Spencer. Consistent with his affidavits, Spencer testified that he had been the one to fire the shots and that Newell was not present. He testified that only one other person was with him in the car. He confirmed that the other person was not Newell, but he declined to identify who it was. When asked, Spencer stated that he did not "feel comfortable answering that question." Spencer testified that, after his arrest, the two detectives who interrogated him promised that they would let him go if he told them that Newell "did it," so he did. He denied knowing who had drafted the written statement he signed and testified that its contents were not true. Spencer also testified that he was in prison not only for the underlying offense in this case but also for a separate murder conviction, which would keep him in prison until 2069 unless he obtained relief via a pending postconviction petition.

¶ 22     Before hearing argument, the court asked the parties to summarize the trial evidence:

"THE COURT: Okay. I will hear arguments from both sides. But before I hear arguments, I want the lawyers [on] either side or both sides [to] just place on the record today what was the evidence against Mr. Newell at the trial? What was the evidence against him? He was convicted. Was that a bench trial or jury trial?

[POSTCONVICTION COUNSEL]: It was a bench trial before your Honor. They were tried simultaneously.

\*\*\*

THE COURT: Tell me about the evidence on the bench trial.

[POSTCONVICTION COUNSEL]: Judge, it's my recollection that Lony[a]e Barr testified as well as Tatiana Mason. They both identified Mr. Newell as being present and as the shooter.

THE COURT: And the own [*sic*] shooter; is that correct.

[POSTCONVICTION COUNSEL]: There was only one shooter identified, yes.

THE COURT: And they both identified Mr. Newell as the shooter?

[POSTCONVICTION COUNSEL]: That is correct. I did tender a copy of the Appellate record and the transcripts.

THE COURT: Okay.

[ASSISTANT STATE'S ATTORNEY]: I also have your findings like the actual transcript.

THE COURT: I just want to have a little bit of context for these arguments. They were two identifications of Mr. Newell by people who got shot.

\*\*\*

\*\*\* I will incorporate by reference the trial record. I think I should. I just want to place the trial record to make sure they were aware that I

considered the trial records so we have everything in context. What was Mr.

Newell's sentence on this case?

[ASSISTANT STATE'S ATTORNEY]: 24 years. Two consecutive 12-

year sentences. 24 total. I have a copy of my motion to dismiss which has a

facts section.

THE COURT: Let's go right to arguments."

During the ensuing argument, the court asked postconviction counsel when Barr identified Newell as the shooter, whether she reported seeing Spencer during the shooting, and whether she identified Spencer as a lookout or a driver. Counsel gave accurate answers.

¶ 23    The trial court found that Spencer's testimony was not credible. It observed that the original statement he had given to the police, which he was now disavowing, "was very much on point and corroborative of" and "almost identical to" Mason's and Barr's trial testimony, including that Newell was the shooter. It also noted that Spencer did not assert that Newell was innocent until "very late in the game," when he was "looking at a very lengthy period of jail" and "[h]is hopes [were] diminishing." For those reasons, he found that Spencer's new account was "completely lacking in credibility" and that there was "not a way in the world that any jury could ever[] find him credible" based on the circumstances, including his refusal to identify the driver and "the baggage that he has." The court therefore denied the petition.

¶ 24                              II.  ANALYSIS

¶ 25    On appeal, Newell raises three arguments. We consider each in turn.

¶ 26                A.  Third-Stage Ruling on Actual-Innocence Claim

¶ 27    We begin with the postconviction court's finding after the third-stage evidentiary hearing. After hearing Spencer's testimony and the parties' arguments, the court concluded that no jury would credit Spencer's recantation and new account of the shooting, which was fundamentally a finding that Spencer's new testimony was not "of such conclusive character that it would probable change the result on retrial." *People v. Urzua*, 2023 IL 127789, ¶ 61 (stating standard for ordering

new trial based on newly discovered evidence). On appeal, Newell does not dispute that the facts before the postconviction court reasonably permitted that finding. Instead, he argues that the record shows that the court failed to recall those facts, thereby denying him due process. As this is a challenge to the trial court's decision-making process, not the sufficiency of the evidence supporting its conclusion, our review is *de novo*. *People v. Williams*, 2013 IL App (1st) 111116, ¶¶ 102-104.

¶ 28    An underlying assumption of our legal system is that disputed factual questions will be decided on the evidence properly submitted to a neutral fact-finder. One of the many corollaries flowing from that axiom is that, in a bench trial, "the trial judge must consider all the matters in the record before deciding the case." *People v. Bowie*, 36 Ill. App. 3d 177, 180 (1976). Thus, it violates due process for a court, while acting as trier of fact, to fail to accurately recall testimony at the "crux" of the defendant's case. *E.g. People v. Mitchell*, 152 Ill. 2d 274, 323 (1992) (citing *Bowie*, 36 Ill. App. 3d at 180 (1976)). This principle is not limited to trials. At the very least, it extends to findings made at pretrial suppression hearings. See *Mitchell*, 152 Ill. 2d at 321. We are not aware of a case holding that it applies to postconviction evidentiary hearings, but we assume for the sake of analysis that it does. The question we must answer, then, is whether "the record affirmatively shows" that the court "failed to recall crucial defense evidence when entering judgment." *Williams*, 2013 IL App (1st) 111116, ¶ 75.

¶ 29    Much of Newell's argument on appeal is based on the postconviction court asking the attorneys questions at the hearing about some of the basic facts of the case. Before hearing argument, the court asked whether the trial had been a bench trial or a jury trial, how many people had been identified as shooters, how many witnesses identified Newell, and the length of the sentence it imposed. During argument, the court asked clarifying questions about Lonyae Barr's testimony, including whether she saw Spencer during the shooting, what Spencer was doing, and whether she identified Newell before or after being shown his picture. And later, when postconviction counsel made an oral request for the court to reconsider Newell's sentence as an alternative to a new trial, the court also asked how old Newell was at the time of the shooting. In

this court, Newell argues that these questions revealed "a lack of familiarity with the case." Maybe, but the issue is not what the court knew when the hearing started; it is what the court remembered (or failed to remember) when it entered its findings at the end of the hearing. If anything, the fact that the court asked questions about the case—questions that were promptly answered by the parties—before entering any findings shows that the court rendered its decision with an accurate understanding of the important facts. It certainly does not show that it misrecalled crucial evidence.

¶ 30   As for the court's actual findings, Newell argues that the court misremembered the evidence when it characterized Spencer's written statement as being "almost identical" to the accounts given by Mason and Barr. But the two "key points" Newell claims that Spencer disagreed with Barr and Mason over turn out to be minor discrepancies about irrelevant details of the first time the car drove past the group at Winchester and 56th: Mason and Barr testified that they were both present when the car drove past on 56th, while Spencer's statement related that he only saw "one girl" in the group while the car drove past on Winchester. Their accounts did not disagree on what actually mattered: when the car returned only minutes later, Newell—not Spencer—was sitting in the back seat, had a gun, and started shooting. The court's description of these accounts as being "almost identical" was accurate, at least as far as the material facts were concerned. It does not show that the trial court misremembered evidence at the crux of the case.

¶ 31   Newell's remaining complaint is that the court's findings did not discuss his alibi witness or note that Barr and Mason both had their credibility impeached with prior convictions for retail theft (both) and criminal damage to property (just Mason). That the court did not go into greater detail about the facts of the case does not amount to an affirmative showing that it misrecalled the evidence. It did not say that Newell had not put on an alibi defense. It did not find that Barr's and Mason's characters were beyond reproach. It simply did not mention either point, and there was no particular reason for it to do so. As the State had reminded it during argument only moments earlier, the court had already once rejected Newell's alibi as not credible. And in evaluating the possible effect of Spencer's new testimony on a trier of fact, the extent to which Barr and Mason's

accounts of the shooting matched Spencer's original story (and contradicted his new one) were far more significant than their criminal histories.

¶ 32    Because the record does not affirmatively show that the trial court failed to recall or misremembered facts that went to the crux of Newell's actual-innocence claim, Newell's due-process rights were not violated. We affirm the trial court's judgment as to the actual-innocence claim.

¶ 33                B.  Ineffective Assistance for Not Raising Confrontation Claim

¶ 34    Newell next argues that the trial court erred by dismissing his claim that appellate counsel was ineffective for not filing a brief on direct appeal arguing that he was entitled to a new trial because the trial court erroneously considered his codefendant's statement when evaluating his guilt. A motion to dismiss a postconviction claim tests "whether the petition's allegations sufficiently demonstrate a constitutional infirmity which would necessitate relief." *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). In making that determination, the court must liberally construe the petition's allegations and take as true all well-pleaded facts. *Id.* at 381, 382. The motion to dismiss should only be granted if the allegations "fail to make a substantial showing of imprisonment in violation of the state or federal constitution." *Id.* at 382. As this is a question of law, our review is *de novo*. *Id.* at 388.

¶ 35    The parties have framed the issue before us as whether Newell was denied his constitutional right to the effective assistance of counsel on direct appeal. See *People v. Morgan*, 187 Ill. 2d 500, 529 (1999) (citing *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985)); U.S. Const., amend. XIV § 1; Ill. Const. 1970, art. I, § 2. But their only point of contention is whether the alleged confrontation violation would have merited relief on direct appeal. See *People v. Moore*, 177 Ill. 2d 421, 428 (1997) (addressing the merits of the unraised claim to decide whether counsel's failure to raise it was ineffective).

¶ 36    The right of the accused to confront and cross-examine the witnesses against him is fundamental. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8; see *Pointer v. Texas*, 380 U.S.

400, 404-05 (1965) (holding that the confrontation right is a component of due process). Among other things, the confrontation right prevents the prosecution from introducing testimonial out-of-court statements except when the declarant testifies at trial or when the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). A consequence of this rule is that the confession of a codefendant cannot be admitted against the defendant when the codefendant invokes his fifth amendment privilege against self-incrimination at trial. *Douglas v. Alabama*, 380 U.S. 415, 419-20 (1965).

¶ 37    This presents a problem at joint trials. Normally, evidence admissible for one purpose but not another purpose can be admitted subject to an instruction limiting the uses to which the jury can put the evidence, and juries are presumed to follow such instructions. But the "powerfully incriminating" nature of a nontestifying codefendant's confession makes its admission one of the rare "contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135-36 (1968). Because limiting instructions are not effective in this context, admitting a nontestifying codefendant's confession at a joint jury trial violates the defendant's confrontation right. *Id.* at 137.

¶ 38    The right to confrontation applies in both bench trials and jury trials, so a nontestifying codefendant's confession is inadmissible against any other defendants even in bench trials. See *Lee v. Illinois*, 476 U.S. 530, 539-43 (1986). When it comes to "compartmentalizing *** consideration of evidence," though, the law puts somewhat more faith in judges than it does in juries. See *People v. Schmitt*, 131 Ill. 2d 128, 137 (1989). Hence, while a nontestifying codefendant's confession is not admissible at a joint jury trial, it can be heard by the court during a joint bench trial, and it is presumed that the court considers it only against the codefendant "unless the contrary affirmatively appears of record." *Id.* at 138-39. But even for judges, considering a confession against one defendant but not another is not "without its pitfalls." *Id.* at 137. A court that admits a nontestifying codefendant's confession at a joint bench trial should

"exercise the utmost caution to recite for the record its findings in each case and the reasons for its rulings." *Id.* at 138.

¶ 39 In his briefs, Newell points to three passages in the transcript that, according to him, rebut the presumption that the trial court did not consider Spencer's confession against him. Two of those passages—the trial court's handling of an objection during closing argument and its reference to a fact shown only by Spencer's statements when discussing the general antipathy between the Hoyne Boys and the Winchester Boys—are arguable, but we think that they do not necessarily reflect error. There is, however, one unambiguous indication in the record that the trial court considered Spencer's confession while evaluating the evidence against Newell. In finding that the State had not proven that Newell acted with the intent to kill, the court expressly referenced Spencer's confession:

> "The tougher part of the analysis is that about attempt murder because, in Illinois, you have to show specific intent to kill. It's a clear inference that might be drawn that if you are shooting at somebody in this fashion in a drive-by shooting, you are trying to kill them. *That was not elicited from Mr. Spencer during the course of his statement.* It wasn't mentioned by any witnesses as something that was said or they felt was happening.
>
> They knew they were being shot at and shot, but I don't have I believe sufficient evidence on the element of specific intent to kill." (Emphasis added.)

This clear and unequivocal reference to Spencer's out-of-court statements contradicts the judge's on-the-record assurances that he would not consider Spencer's statements when evaluating Newell's guilt, and it rebuts the presumption that the court only considered those statements as to Spencer.

¶ 40 Confrontation violations require reversal unless "it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained at trial." *In re Brandon P.*, 2014 IL 116653, ¶ 50. The State bears the burden of showing that a constitutional error is harmless. *People*

*v. Townsend*, 2023 IL App (1st) 200911, ¶ 70. The evidence against Newell at trial was strong. Two witnesses who knew him identified him as the shooter within hours of the shooting—and before the police ever spoke to Spencer—and the intended victim's membership in a rival gang provided an obvious motive. Newell's only countervailing evidence was the flimsy-at-best alibi given by his mother's then-fiancé, Benton, who testified that he spent the late afternoon and the evening playing cards with Newell. That account was contradicted by Newell's own statements to interrogators, and Benton's credibility was further impeached by his admission that, despite speaking to a prosecution investigator, he did not mention that Newell was with him at the time of the charged shooting. This is a case where the properly admitted evidence so overwhelmingly favored the prosecution that we are left with no reasonable doubt that Newell would have been found guilty even if the trial court had not considered Spencer's statement. See *Brandon P.*, 2014 IL 116653, ¶ 51.

¶ 41    It follows that appellate counsel was not ineffective. Even assuming that counsel's conclusion that there was no arguable merit to the appeal was professionally deficient, the confrontation claim was ultimately without merit, meaning that counsel's failure to raise it did not prejudice Newell. *People v. Pitsonbarger*, 205 Ill. 2d 444, 465 (2002). Newell failed to make a substantial showing that he was denied his right to the effective assistance of counsel on direct appeal, so his claim was properly dismissed.

¶ 42        C.  Unreasonable Assistance by Postconviction Counsel

¶ 43    Newell's final allegation of error is that postconviction counsel failed to provide him with a reasonable level of assistance in presenting two of his claims during second-stage proceedings. He argues that the *pro se* petition did not properly present a youth-based constitutional challenge to his sentence because it did not attempt to show how recent insights into brain development in adolescents and young adults specifically applied to him and to his circumstances. He also argues that counsel should have tracked down and attached to the petition transcripts of the messages he

alleges that he exchanged with Lonyae Barr about the shooting and photographs of Barr that would show her gang affiliation.

¶ 44     By statute, indigent postconviction petitioners have a right to the assistance of appointed counsel, a right that attaches when the petition is advanced past the first stage. See 725 ILCS 5/122-4 (West 2022); *People v. Urzua*, 2023 IL 127789, ¶ 56. Counsel plays a crucial role in postconviction proceedings. The Post-Conviction Hearing Act "can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court." *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968). These basic duties are codified in Rule 651(c), which requires counsel to certify that she (1) consulted with the petitioner to ascertain the petitioner's claims, (2) examined the trial record, and (3) amended the *pro se* petition as necessary to adequately present the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Postconviction petitioners are entitled to a reasonable level of assistance from counsel, and Rule 651(c) helps ensure that they get it. *People v. Addison*, 2023 IL 127119, ¶ 20. Where, as here, counsel certifies that she complied with these three duties, there is a rebuttable presumption that petitioner received a reasonable level of assistance. *Id.* ¶ 21. Whether postconviction counsel failed to provide reasonable assistance is a legal issue that we review *de novo. People v. Russell*, 2016 IL App (3d) 140386, ¶ 10 (citing *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007)).

¶ 45     Before reaching whether counsel provided the necessary assistance in this case, we address the State's arguments that counsel had no obligation to do anything with the Facebook claim and the sentencing claim because they had no merit. That argument runs contrary to "decades of precedent" holding that failure to provide reasonable assistance cannot be excused as harmless on the basis that the petition's claims lacked merit. *Addison*, 2023 IL 127119, ¶ 33; see *People v. Tyner*, 40 Ill. 2d 1, 3-4 (1968). This principle is grounded on "the conviction that where postconviction counsel does not adequately complete the duties mandated by [Rule 651(c)], the limited right to counsel conferred by the [Post-Conviction Hearing] Act cannot be fully realized." *People v. Suarez*, 224 Ill. 2d 37, 51 (2007). The State no doubt disagrees with that principle, which

it has regularly—and without success—asked the supreme court to overrule. See *Addison*, 2023 IL 127119, ¶ 33 n.2; *Suarez*, 224 Ill. 2d at 49-51; *People v. Turner*, 187 Ill. 2d 406, 415-16 (1999); *People v. Jones*, 43 Ill. 2d 160, 162 (1969). But its brief neither acknowledges nor addresses this controlling precedent, and we must adhere to it. *Yakich v. Aulds*, 2019 IL 123667, ¶ 13; *Field v. People ex rel. McClernand*, 3 Ill. 79, 98 (1839).

¶ 46     We also reject the State's argument that counsel had no duty to properly present the sentencing claim because Newell already raised it in his *pro se* response to appellate counsel's *Anders* motion. We are highly skeptical of the assumption that this claim—which both parties have argued requires evidentiary support that is not in the record—could be barred by *res judicata*. See *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005) ("It has long been held that *res judicata* and forfeiture do not apply *** where facts relating to the claim do not appear on the face of the original appellate record.") In any event, we agree with Newell that the State forfeited its right to assert *res judicata* by not raising it in its motion to dismiss. *People v. Cowart*, 2015 IL App (1st) 131073, ¶ 11 ("The State forfeits a nonjurisdictional procedural challenge to a postconviction petition when it fails to raise that challenge in a motion to dismiss."). By failing to raise to raise *res judicata* below, the State denied Newell (and postconviction counsel) the opportunity to amend the petition in an effort to overcome that bar. See *People v. Anguiano*, 2013 IL App (1st) 113458, ¶ 44 ("Postconviction attorneys have a duty to attempt to overcome procedural bars, such as forfeiture, *res judicata*, and untimeliness.").

¶ 47     That brings us to Newell's argument that counsel failed to properly present his claims to the trial court. One of postconviction counsel's essential duties is to amend the *pro se* claims as necessary to adequately present them. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). What is required to adequately present a postconviction claim depends on the needs of each particular case. That duty might require counsel to add necessary allegations to the petition. *E.g. People v. Dixon*, 2018 IL App (3d) 150630, ¶ 16. It might call for counsel to obtain supporting evidence specifically identified in the petition. *E.g. People v. Johnson*, 154 Ill. 2d 227, 248 (1993). It might demand that counsel find a way to overcome a procedural bar to the claim. *E.g. Turner*, 187 Ill. 2d at 414. At

the same time, the duty of proper presentation does not require counsel to "bolster[] every claim" in the petition or track down "each and every witness or shred of evidence" that could conceivably support a claim. *People v. Custer*, 2019 IL 123339, ¶ 38. In other words, counsel's duty is to do whatever might be necessary to ensure that the court is able to reach and fairly consider the merits of the postconviction claims—no more, no less.

¶ 48    Based on our review of the record, we conclude that counsel failed to adequately present Newell's claim that trial counsel was ineffective for not obtaining his Facebook messages with Barr and the photographs of Barr depicting her gang affiliation. In the circuit court, the State moved to dismiss that claim not only on the merits but also because the absence of evidentiary support meant that the petition did not comply with the Post-Conviction Hearing Act's documentation requirements. See 725 ILCS 5/122-2 (West 2022) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."). When a *pro se* petition specifically identifies supporting evidence, postconviction counsel has a duty to obtain that evidence. *Johnson*, 154 Ill. 2d at 248. As the State points out, it is possible that counsel might have tried to track down the messages and photographs without success. We agree that the record does not affirmatively show that counsel tried, but failed, to get that information. But if counsel was unable to obtain that evidence, then she was obliged to amend the petition to explain why it was not available. See 725 ILCS 5/122-2 (West 2022); *Turner*, 187 Ill. 2d at 414. And if counsel concluded that the messages did not exist or that the claim otherwise lacked an arguable basis in law or fact, then she had an obligation to withdraw it. See Ill. R. Prof. Cond. (2010) R. 3.1 (eff. Jan. 1, 2010) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."). Counsel did none of these things. Instead, despite the claim's obvious failure to comply with section 122-2, she certified that no amendments were necessary to present it. That assertion was wrong. As a matter of law, noncompliance with section 122-2's documentation requirement "is fatal to [a] petitioner's claims." *Turner*, 187 Ill. 2d at 414. We find that Newell has rebutted the presumption that he received reasonable assistance on the Facebook claim.

¶ 49   We come to the same conclusion about Newell's challenge to his sentence under article I, section 11, of the state constitution.[2] An as-applied constitutional challenge cannot be resolved without a developed record disclosing the pertinent facts and circumstances of the case. *People v. Harris*, 2018 IL 121932, ¶ 39. When the subject of the challenge is a criminal sentence, "basic information about [the] defendant," such as that found in a pre-sentence investigation report, is not good enough. *Id.* ¶ 46. Without "evidence about how the evolving science on juvenile maturity and brain development *** applies to [the] defendant's specific facts and circumstances," Newell's sentencing claim could not go forward. *Id.* Indeed, in its motion to dismiss, the State argued that, although general information about brain development was attached to the petition, it "failed to include the required factual link to [Newell's] specific circumstances." We cannot find that this claim was properly presented when it was not supported by any evidence and no explanation was offered for its absence. See 725 ILCS 5/122-2 (West 2022).

¶ 50   Because the *pro se* petition contained two claims that could not be properly presented without amendment, the record rebuts postconviction counsel's certification that no amendments to the *pro se* petition were necessary. That leaves us no choice but to remand. *Addison*, 2023 IL 127119, ¶ 42. Our decision to remand does not amount to a finding that these claims have legal merit. It is not clear how Newell can mount a *Miller*-based challenge to his sentence, which is neither a formal life sentence nor its *de facto* equivalent. See *People v. Hilliard*, 2023 IL 128186, ¶¶ 28, 40 (finding 18-year-old offender's youth-based constitutional challenge to his 40-year sentence frivolous and patently without merit). Similarly, we do not see how the messages and photographs described in the *pro se* petition would have had any impact on the trier of fact's

_____

[2]   Although the unamended *pro se* petition also alleged that Newell had been sentenced in violation of the "U.S. Constitution," on appeal, he only challenges postconviction counsel's conduct as to his claim under article I, section 11 of the Illinois Constitution of 1970. Hence, we find only that counsel did not properly present the state constitutional claim. We do not make any findings about counsel's representation insofar as it concerns any federal constitutional claim under the eighth amendment.

evaluation of the evidence. But "it is inappropriate to consider the merits of the claims in the petition when counsel has not complied with Rule 651(c) by shaping the claims into the appropriate form." *Addison*, 2023 IL 127119, ¶ 42 (describing *Turner*, 187 Ill. 2d at 416-17). We hold only that these two claims, which necessarily required evidentiary support, were not properly presented.

¶ 51                                    D.  Reassignment on Remand

¶ 52    Finally, Newell asks us to remand with instructions to assign this case to a different judge. We take judicial notice of the fact that, while this appeal was pending, the judge who presided over Newell's trial and postconviction proceedings retired. See Illinois Courts, *Circuit Court Vacancies*, https://www.illinoiscourts.gov/judges/judicial-vacancies/circuit/ (last visited July 23, 2024). That moots the request for reassignment, so we do not address it.

¶ 53                                    III.  CONCLUSION

¶ 54    For the foregoing reasons, we affirm the denial of Newell's actual-innocence claim and the dismissal of his claim that he was denied effective assistance of counsel on direct appeal. As to the remaining claims, the judgment of the circuit court is vacated, and the cause is remanded for compliance with the Rule 651(c) duties, including the filing of an amended petition, and for the court to hold second-stage proceedings on any amended claims.

¶ 55    Affirmed in part and vacated in part; cause remanded with directions.