2025 IL App (1st) 231636-U

FIRST DIVISION
June 2, 2025

No. 1-23-1636

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Petitioner-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 02 CR 01171 |
| TERRY POWE, | ) | |
| | ) | Honorable |
| Respondent-Appellee. | ) | Domenica A. Stephenson, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Lavin specially concurred.

**O R D E R**

¶ 1    *Held*:    The circuit court's second-stage dismissal of the postconviction petition is reversed and the cause is remanded for new second-stage proceedings where the record is devoid of a Rule 651(c) certificate and demonstrates that postconviction counsel rendered unreasonable assistance.

¶ 2    Following a jury trial in the circuit court of Cook County, the 22-year-old petitioner, Terry

Powe, was convicted of first degree murder and sentenced to 50 years' imprisonment. The petitioner now appeals from the second-stage dismissal of his successive postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, the petitioner argues that he should have been permitted to proceed to an evidentiary hearing because his petition made a substantial showing of actual innocence. In the alternative, he argues that he was denied his right to the reasonable assistance of postconviction counsel. For the following reasons, we reverse the judgment of the circuit court and remand for further second-stage proceedings.

¶ 3                                    I. BACKGROUND

¶ 4     Because the procedural history of this case and the evidence adduced at the petitioner's trial are fully articulated in our decision affirming the petitioner's conviction on direct appeal (*People v. Powe*, No. 1-06-0309 (2008) (unpublished order pursuant to Illinois Supreme Court Ruler 23)) and our order affirming the dismissal of his first *pro se* postconviction petition (*People v. Powe*, 2013 IL App (1st) 120652-U)), we set forth only those facts relevant to the resolution of the issues raised here.

¶ 5     During the petitioner's trial, it was undisputed that on November 15, 2001, the petitioner shot the victim, Devon Wiley, in the parking lot of a bank located at 4703 South Drexel Avenue, in Chicago. At trial, the petitioner raised the affirmative defense of self-defense and wanted the jury to be instructed on self-defense and second-degree murder premised on both provocation and his unreasonable belief in self-defense. The trial court, however, ruled that the petitioner was not entitled to any of these instructions based on the evidence presented at trial.

¶ 6     Summarized, that evidence established the victim's brother, Marcel Wiley, had dated the petitioner's girlfriend, Kiesha Dixon, for over a year prior to the shooting. About a month before,

Kiesha broke up with Marcel and began dating the petitioner. Several days prior to the shooting, Marcel went to Kiesha's apartment looking for the petitioner, and pushed Kiesha, who was holding a baby, against the wall, so she grabbed a knife to defend herself. As Marcel jumped down the stairs to leave, he pulled up his shirt and Kiesha saw the handle of a gun. Kiesha then heard the victim honking at Marcel from his car in the alleyway. Kiesha told the petitioner about this incident on the following day.

¶ 7    On November 15, 2001, Kiesha and the petitioner drove to Keisha's home in the petitioner's car. The petitioner did not live in the same neighborhood and did not know anyone except for Keisha and her mother, Audrey Dixon, there. While exiting their car, the petitioner and Keisha were accosted by Marcel, the victim, their cousin Jermain, and another man. All four were much bigger than the petitioner. Marcel, who was angry that Kiesha had a new boyfriend, opened a beer and poured it over Kiesha's head and flicked a cigarette at her. In response, Kiesha picked up the bottle and hit Marcel over the head with it. Enraged that Kiesha had hit his brother, the victim approached and started "hollering" at Kiesha, swearing and calling her and the petitioner names.

¶ 8    According to the petitioner's videotaped statement to the police, Marcel then walked up to Kiesha "like he was going to hit her," so he stepped between them. At that point, the victim approached and yelled at the petitioner to "get his hands off" Marcel or "he would do something." In his statement to police, the petitioner said that while Keisha kept crying, Marcel went to his car and reached under the seat, "like he was reaching for a weapon." On the other hand, Marcel claimed that neither he nor his brother were armed but that the petitioner lifted his shirt and displayed a gun tucked into his waistband.

¶ 9    Soon thereafter, Keisha's mother Audrey arrived and ushered Kiesha and the petitioner

into her nearby apartment. After the three of them left, the victim broke a window on the petitioner's car while his cousin Jermain followed the petitioner and Keisha into Audrey's building.

¶ 10    Fearing that they were "trapped" and "surrounded by [all] those [Black P.] Stones," waiting to "jump" them, both Kiesha and the petitioner made phone calls, with the petitioner reaching out to his cousin for help. About ten minutes later, they went downstairs to check if the petitioner's cousin had arrived to "bust them out." Seeing that he was not there and observing the broken window on the petitioner's car, they got into the car and drove off.

¶ 11    At trial, the parties presented conflicting evidence as to what transpired next. Marcel claimed that the petitioner and Kiesha found and blocked his car, after which they chased him and the victim "like the cops" "bumper to bumper." Kiesha, on the other hand, testified that once they left her mother's apartment, Marcel and the victim tracked them down and followed them in a white car, chasing them at 60 to 75 miles per hour for several blocks before the petitioner made a U-turn to escape. The petitioner's videotaped statement to the police is consistent with Keisha's testimony. In it, the petitioner additionally stated that at Drexel Avenue and 51st Street, Marcel and the victim pulled up parallel to his car, so he ducked down, believing that they were about to shoot. The petitioner explained that afterwards he moved the gun that he kept under the seat "for protection" to the cupholder next to him.

¶ 12    Ultimately, both vehicles ended up in a nearby bank parking lot. Marcel claimed that he drove into the parking lot because he was close to running out of gas, while Keisha testified that the petitioner pulled into the parking lot first, to get away from Marcel. In his videotaped statement to police, the petitioner admitted that he pulled into the parking lot after Marcel.

¶ 13    Once there, Marcel and the victim exited their vehicle, while the petitioner and Kiesha

4

remained inside theirs. Standing about 8 feet from the petitioner's passenger side window, the victim and Marcel proceeded to argue with Keisha. The petitioner did not engage, even though Marcel and the victim kept "hollering" at him to get out of the car. Eventually at the victim's command, Marcel went back into his car, and drove off, while the victim remained standing in the parking lot.

¶ 14     Keisha testified that the victim then continued to "holler" at her while walking back and forth. He then said that he was "BPS," meaning that he was in a gang, and threatened that if she got out of the car he would "slap her." After she retorted, the victim yelled "on my grandfather's grave I'm going to kill you all," after which he "reached towards his hip." Keisha immediately ducked believing that he was about to "to pull out a gun" and shoot. She explained that she did not wait to see the gun because she did not want to be shot in the face. Keisha then heard gunshots, after which the petitioner drove away. It was then that she realized that the petitioner had fired the shots because he had a gun, which she had not seen before.

¶ 15     The victim's friend, and convicted felon, Tyrone Smith, testified that he witnessed the shooting after Marcel left the parking lot. He did not hear the victim make any threats, nor see any weapons in the victim's hand, but heard the victim challenge the petitioner and Kiesha to get out of the car and fight. Smith repeatedly urged the victim to leave but the victim refused and continued to argue with Keisha. As he walked away from the parking lot, Smith heard two shots and saw the petitioner lean from the driver's seat and shoot out of the passenger side window before driving off. Tyrone did not stay at the scene to speak to officers about what he had observed.

¶ 16     In his videotaped statement to police, the petitioner admitted that he shot the victim while the victim was standing outside of the passenger door of his car. He claimed that he did so only after the victim walked toward his car and reached for his shirt like he "had a gun or something,"

but acknowledged he did not see a weapon. The petitioner also admitted that when he pulled into the parking lot after Marcel and the victim he intended to "shoot them in the leg or something" but that he "made a mistake" and "shot them in the body."

¶ 17 Even though the jury was not instructed on self-defense, during deliberations, the jurors sent a note to the judge asking for the "definition of self[-]defense." The judge responded that the self-dense definition would not be provided because "[i]t does not apply."

¶ 18 The jury found the petitioner guilty of first degree murder and the circuit court sentenced him to 50 years' imprisonment.

¶ 19 On direct appeal, the petitioner argued, *inter alia*, that the circuit court erred in refusing to instruct the jury on self-defense and second degree murder premised on his unreasonable belief in self-defense. We affirmed the petitioner's conviction and sentence holding that neither instruction was supported by the record because "[the petitioner] admitted in his videotaped statement that he arrived at the bank parking lot intending to shoot [the victim or Marcel, albeit in the leg], neither [the petitioner] nor Kiesha saw a weapon, and there was no testimony that the victim was known to carry a gun." *Powe*, No. 1-06-0309 (2008) (unpublished order pursuant to Illinois Supreme Court Ruler 23).

¶ 20 On March 30, 2009, the petitioner filed his first *pro se* postconviction petition arguing, *inter alia*, that his trial counsel was ineffective for failing to introduce evidence of the victim's violent character, which would have entitled him to a jury instruction on self-defense or second degree murder. In support, the petitioner attached affidavits from himself, Keisha and Audrey, attesting to the victim's violent character, gang membership, his recent release from prison, and the fact that he always carried a gun. After the circuit court dismissed the petition at the second stage of postconviction proceedings, we affirmed. *Powe*, 2013 IL App (1st) 120652-U, ¶ 59. In

6

doing so, we held that the petitioner could not establish the requisite prejudice so as to proceed with his ineffective assistance of counsel claim. *Id*. ¶ 54.

¶ 21    On July 13, 2015, the petitioner filed a *pro se* motion for leave to file the instant successive postconviction petition, asserting, *inter alia*, actual innocence. In support of that claim, the petitioner attached a December 5, 2014, affidavit from Duwan Patterson. Patterson attested that he was "an associate" of the victim for over 10 years prior to his death and that he knew the victim as an active member of the Black P. Stones, whose name "rang through the neighborhood" for his violent acts "including shooting at rival gang members." Patterson described the victim as violent, "wild," and "always either intoxicated or high." According to Patterson, the victim always carried a gun on his person or near his reach and liked to "threaten" and "intimidate people" with his "physical size," and by "pulling out his gun" on them. Patterson attested that if subpoenaed to court he would testify to these facts, "*especially since [he] witnessed [the victim] having a gun at the time of the shooting*." (Emphasis added).

¶ 22    The petition did not include an affidavit from the petitioner explaining under what circumstances he learned of Patterson and how he was able to obtain Patterson's affidavit. Instead, the petition simply alleged that "through the exercise of due diligence," the petitioner "did not discover" Patterson until the litigation of his first postconviction petition was over and that the petitioner "made a sincere effort to discover evidence of anyone who witnessed the shooting and could not have obtained this affidavit at an earlier time."

¶ 23    On July 22, 2015, the circuit court granted the petitioner's motion for leave to file his successive postconviction petition, docketed the petition, and appointed the Office of the Public Defender to represent him. Assistant Public Defender Steven Black was assigned to the case. It would take nearly seven years and an inordinate number of continuances for counsel to file an

amended petition.

¶ 24    Initially, the petition lingered in court for two years after which the petitioner sent a letter to the judge inquiring about the status of his petition, and the court had to admonish counsel Black to speak with his client.

¶ 25    In July 2018, a different assistant public defender (Kristina Menzel) appeared on behalf of postconviction counsel Black informing the court that "Black ha[d] indicated that he [wa]s hoping to file his amended petition and 651(c) certificate on the next court date." Subsequently, however, yet another assistant public defender (Diane Slocum) informed the court that Black was now on "medical leave" but was "working on his amended petition" and needed more time.

¶ 26    Six months later, in February 2019, the circuit court noted that the "case had f[allen] off the call," and asked the Assistant State's Sttorney (ASA) who was present at the hearing, to speak with the Office of the Public Defender and find out who was on the case. At the next court date, the ASA informed the judge that she had spoken to a public defender who was reaching out to his supervisor to make sure somebody appeared on behalf of the petitioner at the next hearing. At that point, the circuit court interjected that it believed "Ms. Slocum" was assigned to the case. As the court noted, "Ms. Slocum was here on October 3rd and it was continued to January 16th for defense filing and usually if one Public Defender's in for another one I write they're in court for someone else. I didn't write that. *Not that I couldn't have made a mistake but I usually don't on that*." (Emphasis added.)

¶ 27    On March 11, 2019, postconviction counsel Black returned to court and stated that he was "in the process of writing this up" but needed just "one more date to get it on file." At the next hearing, however, he asked for more time to address some new issues. For the next three years, counsel repeatedly promised to file his amended petition at the next court date but inevitably failed

to do so. Throughout this time, counsel continued to refer to the petition as including only two issues.

¶ 28    On February 8, 2022, counsel informed the court that he "was done" with his amended petition and Rule 651(c) certificate and just needed to "scan some exhibits," but would have it "on file, on e-file this evening." The trial judge responded she "also require[d] filings to be e-mailed to the courtroom e-mail" because she never got the "e-filings."

¶ 29    On April 14, 2022, postconviction counsel informed the court that he had e-filed his amended petition on February 23, 2022. That file-stamped amended petition is part of the common law record. In it, counsel affirmatively raised two claims: ineffective assistance of trial counsel based on counsel's failure to inform the petitioner of a plea offer, and a proportionate penalties challenge to the petitioner's sentence. As to the petitioner's actual innocence claim, the amended petition merely stated that it "incorporate[d]" the "[p]etitioner's *pro se* pleading." The *pro se* petition, unchanged, was attached as Exhibit 1 to the amended petition.

¶ 30    While counsel said nothing about his 651(c) certificate, at the April 14, 2022, hearing, the circuit court commented that "the defense [had] filed their amended postconviction petition and 651(c) certificate back on February 8th" and that the case was up for the State's response. The court's hand-written half-sheet for February 8, 2022, notes the same. The record before us, however, contains no 651(c) certificate.[1]

¶ 31    The State filed a motion to dismiss on April 13, 2022.[2] After postconviction counsel said that he was not going to file a response, on August 28, 2023, the circuit court granted the State's

---

[1] The parties agree that there is no 651(c) certificate in the common law record on appeal. In addition, they do not dispute that neither the Office of the Public Defender nor the State's Attorney's Office has a filed-stamped copy of this certificate.

[2] We note at this hearing, the trial judge instructed the State to "email" its motion "to the court room instead of e-file it" because otherwise the court "would never get it," as it "stays in cyberworld." Unlike the 651(c) certificate, however, the State's file-stamped motion to dismiss with the April 13, 2022, date is part of the record on appeal.

motion. The petitioner now appeals.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, the petitioner argues that he made a substantial showing of actual innocence, or, alternatively, that he was denied his right to reasonable assistance of postconviction counsel. Because we find that the reasonable assistance claim is dispositive, we need not address the other contention.

¶ 34    The Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a three-stage process by which a criminal defendant may challenge his conviction based on a substantial denial of his federal or state constitutional rights. See *People v. Cotto*, 2016 IL 119006, ¶ 26; *People v. Tate*, 2012 IL 112214, ¶ 8; *People v. Hodges*, 234 Ill. 2d 1, 9 (2009); *People v. Peeples*, 205 Ill. 2d 480, 509 (2002); *People v. Johnson*, 2017 IL 120310, ¶ 14; *People v. English*, 2013 IL 112890, ¶ 22. Because a postconviction proceeding is not a substitute for a direct appeal but, rather, a collateral attack on a final judgment, issues that were raised and decided on direct appeal are barred by *res judicata* and those that could have been raised on direct appeal, but were not, are forfeited. *English*, 2013 IL 112890, ¶ 22.

¶ 35    Accordingly, the Act contemplates the filing of only one petition without leave of court. 725 ILCS 5/122-1(f) (West 2020). Our supreme court has identified only two bases upon which this procedural bar against successive petitions may be relaxed: (1) when the petitioner satisfies the cause and prejudice test; or (2) when he shows actual innocence. *People v. Harris*, 2025 IL 130351, ¶ 41; *People v. Sanders*, 2016 IL 118123, ¶ 24. *Id.* To show actual innocence, the petitioner must present evidence that is: (1) "new" because it was not discoverable earlier through the exercise of due diligence; (2) material and not cumulative; and (3) of such conclusive character that it would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47;

*Sanders*, 2016 IL 118123, ¶ 24 (citing *People v. Edwards,* 2012 IL 111711, ¶ 32).

¶ 36    If, as here, the circuit court grants leave, the petition is docketed for second-stage proceedings. *Robinson*, 2020 IL 123849, ¶ 43. At the second stage, counsel may be appointed to represent an indigent petitioner, and the State is permitted to file responsive pleadings and may seek dismissal of the petition on any ground, including procedural default. 725 ILCS 5/122–2.1(a)(2), (b), 122-4, 122-5 (West 2020); *Cotto*, 2016 IL 119006, ¶ 27; *Tate*, 2012 IL 112214, ¶ 10; *People v. Brooks*, 221 Ill. 2d 381, 389 (2006); see also *People v. Bailey*, 2017 IL 121450, ¶ 26. The circuit court must then determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. 725 ILCS 5/122-6 (West 2020); *Tate*, 2012 IL 11214, ¶ 10. In doing so, the court must not engage in fact-finding or credibility determinations but must take as true all well-pleaded facts that are not positively rebutted by the original trial record. *People v. Domagala*, 2013 IL 11368, ¶ 35; *Sanders*, 2016 IL 118123, ¶ 42. When no substantial showing is made, the petition is dismissed. *Tate*, 2012 IL 11214, ¶ 10. If, however, a substantial showing is set forth, the petition must be advanced to the third stage for the circuit court to conduct an evidentiary hearing. *Tate*, 2012 IL 11214, ¶ 10.

¶ 37    The right to counsel at the second stage of postconviction proceedings is not guaranteed by either the state or federal constitutions; rather it is " 'a matter of legislative grace.' " *Cotto*, 2016 IL 119006, ¶ 28 (quoting *People v. Hardin*, 217 Ill. 2d 289, 299 (2005)); see also *People v. Addison*, 2023 IL 127119, ¶ 19. Accordingly, a petitioner is entitled only to the level of assistance provided for by the Act. *Cotto*, 2016 IL 119006, ¶ 28.

¶ 38    Our supreme court has repeatedly held that under the Act, petitioners are entitled only to a "reasonable" level of assistance. *Cotto*, 2016 IL 119006, ¶ 28. This is so because "[c]ounsel is appointed not to protect postconviction petitioners from the prosecutorial forces of the State but to

shape their complaints into the proper legal form and to present those complaints to the court." *Addison*, 2023 IL 127119, ¶ 19; *People v. Agee*, 2023 IL 128413, ¶ 44; *People v. Suarez*, 224 Ill. 2d 37, 46 (2007); *People v. Johnson*, 154 Ill. 2d 227, 237-38.

¶ 39    To ensure that petitioners receive this level of assistance, Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) imposes three duties on postconviction counsel. *Cotto*, 2016 IL 119006, ¶ 28; see also *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). The rule requires counsel to: (1) consult with the petitioner to ascertain his contentions of constitutional deprivations; (2) examine the record of the trial proceedings; and (3) make "any amendments to the petition filed *pro se* that are necessary for an adequate representation of [the] petitioner's contentions." See Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); see also *Cotto*, 2016 IL 119006, ¶ 28; *Perkins*, 229 Ill. 2d at 42.

¶ 40    Substantial compliance with the duties set forth in Rule 651(c) is mandatory and may be shown "by the certificate of [the] petitioner's attorney." Ill. S. Ct. R. 651(c) (eff. July 1, 2017); see *Addison*, 2023 IL 127119, ¶ 21; *People v. Lander*, 215 Ill. 2d 577, 584 (2005). Where postconviction counsel files a Rule 651(c) certificate attesting that he complied with these three duties, a rebuttable presumption is created that the petitioner received a reasonable level of assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19; see also *People v. Wise*, 2024 IL App (2d) 191139, ¶ 17 (citing *Addison*, 2023 IL 127119, ¶ 21). The petitioner then bears the burden of showing that counsel did not substantially comply with the strictures of the rule. *Addison*, 2023 IL 127119, ¶ 21. "In the absence of [a Rule 651(c)] certificate, however, the record must demonstrate counsel adequately fulfilled the required duties." *People v. Nelson*, 2024 IL App (5th) 210311, ¶ 25; see also *People v. Guy*, 2025 IL 129967, ¶ 69; *Lander*, 215 Ill. 2d at 584. Where the record fails to make such a showing, reversal is required regardless of whether the claims raised in the

petition have any merit. *Addison*, 2023 IL 127119, ¶ 33. We review whether postconviction counsel rendered unreasonable assistance *de novo*. *People v. Mason*, 2016 IL App (4th) 140517, ¶ 19.

¶ 41    In the present case, the parties initially dispute whether postconviction counsel filed a Rule 651(c) certificate, so as to be entitled to a presumption of reasonable assistance. The petitioner asserts that because the certificate is not part of the record on appeal, postconviction counsel must have forgotten to file one. The State, on the other hand, argues that regardless of the absence of the certificate, the trial judge's February 23, 2022, comments and her half-sheet notation for February 8, 2022, unequivocally establish that counsel filed the certificate. For the following reasons, we disagree with the State.

¶ 42    It is undeniable that the common law record before us contains no Rule 651(c) certificate and that neither party has been able to locate a file-stamped copy. Furthermore, the transcript of the proceedings confirms that postconviction counsel never actually stated that he filed a Rule 651(c) certificate. While counsel expressed his intent to do so at the February 8, 2022, hearing, at the next court date, he solely informed the court that he had e-filed his amended petition on February 23, 2022. Counsel said nothing about his Rule 651(c) certificate.

¶ 43    While the State is correct that at that same hearing, the trial judge commented that "the defense" had filed the amended "petition and 651(c) certificate back on February 8th" and that her February 8, 2022, half-sheet includes a similar handwritten notation, we find neither to be dipositive. The trial judge's April 14, 2022, comments could equally refer to the court having received a courtesy copy of the Rule 651(c) certificate through email, as on February 8, 2022, she explicitly instructed postconviction counsel to email her copies of any pleadings he intended to file because she did not receive e-filings. The judge made a similar comment to the State when she

asked that the State's motion to dismiss be emailed because the e-filings often disappeared into "cyberworld." And yet, the State's file-stamped motion to dismiss is part of the record on appeal, while postconviction counsel's certificate is not, and cannot be found by either party. It is likelier to us, then, that just as he did so many times before, when he promised the court that he would file his amended petition on the next court date, but ultimately did not, counsel never filed his Rule 651(c) certificate.

¶ 44 We similarly give little weight to the court's handwritten February 8 half sheet notation. In that respect, we find relevant that on at least one occasion during the postconviction proceedings, the trial judge herself acknowledged that she makes mistakes in her half-sheet notations, and that she did in fact make a mistake regarding which counsel she noted was assigned to represent the petitioner after the case fell off the call. Under this record, we reject the State's invitation to read the court's comments as absolute.

¶ 45 Nonetheless, even if we were to accept the State's assertion that the circuit court's comments and notation establish that postconviction counsel filed his Rule 651(c) certificate on February 8, 2022, we would still be without that certificate in this appeal. Consequently, we are unable to review that certificate to ascertain which of the three duties, if any, outlined in Rule 651(c) counsel actually certified that he fulfilled. Accordingly, under this record, we find that no presumption of reasonable assistance can attach.

¶ 46 The issue that remains before us then is whether, despite counsel's failure to file the certificate, the record demonstrates that counsel substantially complied with the requirements of Rule 651(c). See *Guy*, 2025 IL 129967, ¶ 69; *Nelson*, 2024 IL App (5th) 210311, ¶ 25; *Lander*, 215 Ill. 2d at 584. For the following reasons, we find that it does not.

¶ 47 As already noted above, pursuant to Rule 651(c) postconviction counsel must make "any

14

amendments to the petition[] filed *pro se* necessary for an adequate presentation of [the] petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). This requires that counsel "shape [the petitioner's] *pro se* claims into appropriate legal form," including those necessary to overcome procedural bars. *People v. Pointer*, 2024 IL App (1st) 201359, ¶ 24 (citing *Agee*, 2023 IL 128413, ¶ 44); see also *Addison*, 2023 IL 127119, ¶ 21 (holding that counsel provides unreasonable assistance where he fails to "make amendments that are necessary to avoid procedural bars."); *Johnson*, 154 Ill. 2d at 245 ("[p]ostconviction counsel ha[s] an obligation to present the defendant's postconviction claims to the court in appropriate legal form."); *Profit*, 2012 IL App (1st) 101307, ¶ 18 ("The purpose of *** [R]ule [651(c)] is to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court.").

¶ 48    " 'The second stage of postconviction review tests the legal sufficiency of the petition.' " *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12 (quoting *Domagala*, 2013 IL 113688, ¶ 35). As such, the allegations in the petition must contain a sufficient factual basis for each claim and the claim must be supported by affidavits, records or other evidence, or otherwise explain their absence. *Johnson*, 154 Ill. 2d at 239; *Dixon*, 2018 IL App (3d) 150630, ¶ 20. When the court assesses whether the allegations in the petition make a substantial showing of a constitutional violation, all well-pleaded facts and affidavits are taken as true, but nonfactual and nonspecific assertions that merely amount to conclusions are not sufficient to require an evidentiary hearing. *Dixon*, 2018 IL App (3d) 150630, ¶ 20 (citing *People v. Rissley*, 206 Ill. 2d 403, 412 (2003)); see also *People v. Marbley*, 2016 IL App (1st) 141359, ¶ 19. If an amended petition fails to allege specific facts to support its general claims, "there [is] virtually nothing for the [trial] court to take as true at the second stage." *Dixon*, 2018 IL App (3d) 150630, ¶ 20. Accordingly, such a petition

is not in the proper legal form required by Rule 651(c). *Id.*

¶ 49    Here, the record demonstrates that postconviction counsel failed to make the most basic amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's actual innocence claim.

¶ 50    First, counsel's amended petition merely "incorporate[d]" and attached as an exhibit the petitioner's unaltered *pro se* pleading seeking leave to file the actual innocence claim. Glaringly, that *pro se* pleading raised the actual innocence claim in the context of a motion for leave to file a successive petition and therefore nowhere even alleged that Patterson's affidavit made a "substantial showing" of actual innocence. *Robinson*, 2020 IL 123849, ¶ 43 (noting that where a successive petition is docketed for second-stage proceedings, a petitioner must make a substantial showing of actual innocence to warrant an evidentiary hearing); *People v. Turner*, 187 Ill. 2d at 414 (1999) (holding that postconviction counsel's failure to amend a petition to meet legal requirements despite having the ability to do so constitutes unreasonable assistance).

¶ 51    Second, and more importantly, that pleading is bereft of any specific, factual allegations regarding the newness of Patterson's affidavit, which was necessary to avoid dismissal on procedural grounds. See *Harris*, 2025 IL 130351, ¶ 35 (the newness of evidence alleged as part of an actual innocence claim is the hurdle necessary to avoid the procedural bars of forfeiture and *res judicata* of claims raised in a successive postconviction petition); *People v. Oritz*, 235 Ill. 2d at 333, 336 (2009) (actual innocence claims can be raised so long as the evidence is newly discovered); *People v. Patterson*, 192 Ill. 2d 93, 139 (2000) ("in the interest of fundamental fairness" the procedural bars of forfeiture and *res judicata* can be relaxed where the petitioner presents "new evidence"). Specifically, while the *pro se* pleading alleged that "through due diligence" the petitioner obtained Patterson's affidavit after the conclusion of his first

postconviction proceedings, it provided no facts whatsoever explaining why this proposed testimony could not have been unearthed earlier, or what steps the petitioner took to discover it. See *Robinson*, 2020 IL 123849, ¶ 47 (To constitute "newly discovered evidence" the evidence must have been discovered after trial and could not have been discovered earlier through the exercise of due diligence). Since these facts were presumably within the petitioner's personal knowledge, counsel's failure to acquire a routine affidavit from the petitioner explaining why the witness Patterson was unavailable to him earlier, what steps he took in discovering Patterson, and how he was finally able to locate him, constitutes unreasonable representation. See *People v. Newell*, 2024 IL App (1st) 230178-U, ¶ 48 (holding that where the petition specifically identifies supporting evidence, postconviction counsel's failure to obtain it, or amend the petition to explain its unavailability, constitutes unreasonable assistance)[3]; see also *Johnson*, 154 Ill. 2d at 248 (same).

¶ 52      Third, Patterson's affidavit, attached in support of the actual innocence claim, is similarly patently deficient. Our supreme court has repeatedly held that "[t]he affidavits which accompany a postconviction petition must identify with reasonable certainty" *inter alia*, "the sources [and] character *** of [the] alleged evidence supporting [the] petitioner's allegations." *Johnson*, 154 Ill. 2d at 239; see also *People v. Allen*, 2015 IL 113135, ¶ 32 (the purpose of an evidentiary affidavit is to present a factual basis that the petition's allegations are capable of objective corroboration and to identify "with reasonable certainty" the sources and character of the alleged evidence supporting those allegations). Here, the single statement in Patterson's affidavit that he "witnessed [the victim] having a gun at the time of the shooting," fails to explain both the basis of Patterson's knowledge (*i.e.*, when and from where he observed the shooting) and the content of his testimony (*i.e.* where the victim "ha[d] the gun" or what he was doing with it when he was shot). As such, it

---

[3] Pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023) nonprecedential orders entered under Rule 23(b) on or after January 1, 2021, may be cited.

fails to provide any factual basis for the petitioner's actual innocence claim.

¶ 53    Absent specific, factual allegations in the petition "there was virtually nothing for the circuit court to take as true at the second stage." *Dixon*, 2018 IL App (3d) 150630, ¶ 20. Unsurprisingly, the circuit court below dismissed the actual innocence claim on exactly these grounds, noting the conclusory nature of the petitioner's allegations and the lack of both factual and evidentiary support. See *Johnson*, 154 Ill. 2d at 240 ("A post-conviction petition which is not supported by affidavits or other supporting documents" will be dismissed "without an evidentiary hearing unless the petitioner's allegations stand uncontradicted and are clearly supported by the record"). Under this record, we conclude that postconviction counsel failed to make the necessary amendments to the petition to adequately present the petitioner's actual innocence claim. See *e.g.*, *Wise*, 2024 IL App (2d) 191139, ¶ 19 (holding that postconviction counsel rendered unreasonable assistance in amending the petitioner's *pro se* claim of actual innocence, by not providing a statement or an offer of proof about where the petitioner supposedly was at the time of the crime); *People v. Fultz*, 2023 IL App (5th) 220272-U, ¶¶ 12-14 (holding that postconviction counsel's failure to amend the petition to include the petitioner's affidavit in support of his actual innocence claim constituted unreasonable assistance).

¶ 54    In doing so, we emphasize that postconviction counsel did not provide unreasonable assistance by failing to plead *sufficient* facts to ultimately require the granting of relief. See *Dixon*, 2018 IL App (3d) 150630, ¶ 21; see also *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991). Rather, it was counsel's failure to allege *any* specific facts to support the actual innocence claim that rendered counsel's level of assistance unreasonable. *Dixon*, 2018 IL App (3d) 150630, ¶ 21.

¶ 55    An actual innocence claim is one of the most fundamental assertions of a miscarriage of justice. When counsel fails to properly develop this claim by omitting specific factual support, the

petition is subject to dismissal not on the merits but due to a pleading deficiency. This deprives the petitioner of meaningful access to the postconviction process and contradicts the purpose of Rule 651(c), which is to ensure that constitutional claims are adequately presented and fairly adjudicated.

¶ 56    The State nonetheless asserts that counsel was not unreasonable for failing to alter the *pro se* pleading alleging actual innocence because that claim was barred by *res judicata* and was therefore frivolous. The State argues that because this court has twice rejected the petitioner's contention that he was entitled to a self-defense instruction, the petitioner is improperly attempting to relitigate that issue under the guise of an actual innocence claim.

¶ 57    We agree with the State that it was not necessary for postconviction counsel to include the actual innocence claim in his amended petition if he believed that it was frivolous or patently without merit. *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Our supreme court has repeatedly held that counsel is only required to amend the petition to further claims that are not frivolous. *Id*. ("An attorney *** who determines that defendant's claims are meritless cannot in good faith file an amended petition including those claims"); *Wise*, 2024 IL App (2d) 191139, ¶ 20 ("[C]ounsel has an ethical obligation not to advance frivolous or spurious claims."). However, here, counsel explicitly chose to "incorporate" the petitioner's actual innocence claim in his amended petition, and therefore the record suggests that counsel believed that the claim was at least not frivolous or patently without merit. *Id*.

¶ 58    If, as the State argues, counsel believed that the actual innocence claim was barred by *res judicata* and therefore frivolous, he was obligated to omit it altogether. *Wise*, 2024 IL App (2d) 191139, ¶ 20. However, once counsel decided to include the claim in his amended petition he was required to shape it into proper legal form. *Addison*, 2023 IL 127119, ¶ 24 (counsel renders

unreasonable assistance where he chooses to amend a petition but fails to make the necessary amendments to the petition to put the petitioner's claim in proper legal form); *Wise*, 2024 IL App (2d) 191139, ¶ 20 (by including claims in the amended petition, "as an officer of the court," counsel "impl[ies] *** that they [a]re valid" and his subsequent failure to amend those claims into proper legal form constitutes unreasonable representation).

¶ 59    The State next hypothesizes that counsel was unable to shape the actual innocence claim into proper legal form because the petitioner and Patterson were unwilling to swear to any additional information. The State asserts that because the record shows that postconviction counsel told the court that he spoke with the petitioner and "located the witness that provided the affidavit" for the actual innocence claim, we must presume that counsel spoke to both the petitioner and Patterson but was unable to obtain more information. We disagree.

¶ 60    As already explained above, we are without a Rule 651(c) certificate and so cannot make presumptions on counsel's behalf. Moreover, the transcript of the postconviction proceeding reveals that counsel made these comments in response to the court's admonishment that the petition had lingered in court for two years, prompting the petitioner to write a letter to the judge inquiring about the status of his petition. Counsel never stated on record that he spoke to the petitioner about the actual innocence claim but simply told the court that he had addressed the petitioner's status inquiry by speaking with his client. Similarly, nothing in the record shows that counsel did anything beyond "locating" Patterson, and, as the State itself concedes, that would not have been difficult since Patterson was in the Illinois Department of Corrections (IDOC). To the contrary, the record reflects that after making the aforementioned comments, for the next five years, counsel never mentioned the actual innocence claim again and instead kept referring to the petition as including only two issues. As such, we disagree with the State that the record shows

that counsel tried but was unable to obtain the additional information.

¶ 61    Moreover, if counsel could not procure an affidavit from the petitioner explaining the steps he took to locate witnesses to the shooting and why he was unable to discover Patterson earlier, or get Patterson to explain in more detail what he meant when he stated that he witnessed the victim "having a gun during the shooting," or for some reason believed that Patterson's statement was not genuine such that the actual innocence claim lacked an arguable basis in law or fact, he was obligated to withdraw the claim altogether. See *Newell*, 2024 IL App (1st) 230178-U, ¶ 48; 725 ILC 5/122-2 (West 2022); *Turner*, 187 Ill. 2d at 414 (1999). Counsel did none of these things and therefore rendered unreasonable assistance.

¶ 62    In a last-ditch attempt to rehabilitate counsel's performance, the State points to counsel's efforts related to the two additional claims he addressed in the amended petition and argues that, standing alone, they are sufficient to show that counsel made all the necessary amendments required under Rule 651(c). Contrary to the State's position, however, counsel's addition of new claims, and his efforts with respect to those, is not a substitute for his failure to properly shape the actual innocence claim into proper legal form. As already stated above, by incorporating that claim into the amended petition, counsel confirmed that he found it meritorious and was therefore obligated to add the necessary amendments to adequately present it to the court. See *Addison*, 2023 IL 127119, ¶ 30 (holding that counsel is obligated to properly shape and present each claim that he includes in his amended petition); *see also Johnson*, 154 Ill. 2d at 241-42 (considering postconviction counsel's reasonable assistance as to each claim).

¶ 63    By including the claim in the amended petition and implying that it was valid, "counsel raised the specter of [a] constitutional error *** without any substance to support it." *Wise*, 2024 IL App (2d) 191139, ¶ 20. Under this record, and in the absence of a Rule 651(c) certificate, we

are compelled to conclude that counsel provided unreasonable assistance. Our case law dictates that under these circumstances, the cause be remanded regardless of the merits of the claims raised in the petition. *Addison*, 2023, IL 127119, ¶ 33.

¶ 64                                    III. CONCLUSION

¶ 65    For these reasons, we reverse the judgment of the circuit court dismissing the postconviction petition and remand for new second stage proceedings.

¶ 66    Reversed and remanded.

¶ 67    JUSTICE LAVIN, specially concurring:

¶ 68    I concur in the judgment. However, because I do not believe the matter of counsel's duty to "withdraw the claim" is accurately framed or properly before this court, I would omit that discussion. See *supra* ¶¶ 58, 61; *In re V.S.*, 2025 IL 129755, ¶ 55 (noting, reviewing courts will not decide abstract questions or render advisory opinions). The record and the specific facts of this case, combined with the absence of a 651(c) certificate, sufficiently show counsel was unreasonable.